Carr, J.
This is a bill in equity to subject land to sale, under the lien for the purchase money. As the effort seems, of late, to have been to push this doctrine of equitable lien, beyond what seems to me its legitimate extent, I have thought it might not be amiss to look a little into it. It is a doctrine of comparatively modern date, and seems to have arisen from a supposed understanding between the parties. In Gilman v. Brown, 1 Mason, 212. 4 Wheat. 292. in notis, judge Story discusses the subject with much learning. He says, “ The rule is manifestly founded, on a supposed conformity with the intentions of the parties, upon which the law raises an implied contract; and therefore it is not inflexible, but ceases to act, where the circumstances of the case do not justify such a conclusion.” In that case, there was certainly no express waiver of the equitable lien: it was brought by an appeal to the supreme court of the U. States, 4 Wheat. 255. and the supreme court was clearly of opinion, that, from the circumstances, the parties contemplated no such lien, and therefore decided, without difficulty, against its existence. In Bailey v. Greenleaf, 7 *601 Wheat. 46. it was decided, that this lien could not be asserted against creditors holding under a bona fide conveyanee from the vendee$ and this, after a most able examination of the authorities by the chief justice. Some of his remarks are exceedingly strong to shew the mischief which would flow from extending this equity beyond its just bounds. He says, this lien “ is a secret invisible trust, known only to the vendor and vendee, and those to whom it may be communicated in fact. To the world, the vendee appears to hold the estate divested of any trust whatever; and credit is given to him, in the confidence that the property is his own, in equity as well as at law. A vendor relying upon his lion, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is, in some degree, accessary to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of an estate, on which he claims a secret lien.” Id. 51. Again, he says, “ The lien of the vendor, if in the nature of a trust, is a secret trust, and although to be preferred to any other subsequent equal equity, unconnected with a legal advantage, or equitable advantage which gives a superiour claim to the legal estate, will be postponed to a subsequent equal equity connected with such advantage.” Id. 57. And for this he cites Buller’s note, Harg. Co. Litt. 290. b. note 1. § 18. and Stanhope v. Earl Verney, there stated. These remarks seem to me very sound; and beyond the limits here established, I am unwilling to extend the equitable lien.
In the case before us, looking at the facts of the transactions between Moore and Lee, Lee and Hancock, Hancock and Moore, and then between the three parties, the case does not appear to me, so much like a regular sale and transfer of land, as a cancelling, by the parties all round, of their contracts,—Moore paying Hancock 4000 dollars in timber for his speculation, and taking back his land : more especially, as, instead of regular conveyances, they agreed that the deed made to Lee should be destroyed, and that Lee should give Moore his bond for 500 dollars for the rents *602 and profits of the land while he held it. These facts furnish strong evidence to my mind, that the parties never expected or intended to apply the equitable lien to this transaction. But I shall not discuss this point further; for it is clear to me, that if, as between Hancock and Moore, this lien ever existed, it has been lost, by the subsequent transactions. Moore soon after he got back the land, sold and conveyed it to Franklin, who executed to him his bonds for the purchase money; and these bonds were assigned to Murrell S/ Meem, for valuable consideration, and Franklin -had notice of these assignments before he had notice of Hancock’s claim to this secret trust, this lien for purchase money. The assignees ought to have been made parties; for, as nobody can suppose' Franklin will be left exposed to pay both claims, the question is, which has the preference? But though not parties, the claim of the assignees, is perhaps sufficiently before the court, to enable us to make this comparison. We have seen from the case of Bailey v. Greenleaf, that this equitable lien will be “ postponed to a subsequent equal equity, if connected with a legal advantage.” The assignees here, have that very legal advantage. They can sue at law on the bonds, and this lien will furnish no defence in that forum. Therefore they have nothing to ask of equity, but hands off—let us alone. But independent of this legal advantage, their claim is, I think, decidedly the best. It was said in the .argument, that these assignees took the bonds subject to all the equity of the obligor. True, to all the equity of the obligor: but it is equally-true, that they do not take them subject to the latent equity-of a third person. Murray v. Lylburn, 1 Johns. C. R. 443. Livingston v. Dean, Id. 479. And that is the case here. Franklin has no equity against these bonds, unless he be liable to this equitable lien : he cannot be liable to both: and I think it clear, that he is liable to the bonds.
I have discussed these questions, since what has been said may tend to put an end to the controversy; but they are not properly presented by the record ; since Murrell f *603 Meem, though parties interested in them, have not been made parties in the cause. They ought, undoubtedly, to be made parties, that they may have an opportunity to assert their rights.
Cabell, J.
Without deciding the point, I am willing to consider Hancock as having the same rights that he would have had, if he had conveyed the legal title to Moore, and if the consideration for the purchase had been a pecuniary one. If there were no persons concerned in this case, other than Hancock, Moore and Franklin, it would be perfectly clear, that, as Franklin received notice of Hancock's lien, before he paid his purchase money, the land would be liable in his hands, for the unpaid purchase money due from Moore to Hancock; and it would be equally clear, that Moore, also, would have a lien on the lands for the purchase money due to him from Franklin; although that lien would be subordinate to the lien of Hancock. But there are other persons, whose interests are involved in the controversy. Franklin's bonds to Moore for the purchase money, have been assigned to Murrell Meem, for valuable consideration, and (it seems) without notice of any equity affecting them. This assignment of the bonds transferred to Murrell &f Meem, the lien on the lands which Moore had before the assignment. Is this lien, thus acquired, subordinate in the hands of Murrell fy Meem, to that of Hancock? I think not.
The doctrine of the lien of a vendor of lands is the creature of a court of equity. It ought not, therefore, to be so applied as to operate injustice. So long as it is confined to the parties and their heirs, and to those claiming under them with notice, it can never be liable to objection. But the lien of the vendor, whether it be regarded as a natural equity, or as a trust, is founded on no matter of record, or even of express contract, but is merely implied from the supposed intentions of the parties. It is, in itself, secret and invisible. The vendor had it in his power to make it other *604 wise, by reserving a lien, expressed in his deed to the vendee, or by taking a lien from the vendee, in some other form, so as to be notice to all the world. If he omit to do this; if he convey the land to the vendee, in such a manner as to make him appear to be the complete owner, with full power to sell or to charge it; justice forbids, that he should use his secret lien to the injury of those who, in ignorance of it (an ignorance produced by his own omissions), have acquired for valuable consideration, either the legal title or an equitable incumbrance. That this is so, as to a purchaser of the legal title, is undeniable. It is certainly true, also, as to a mortgagee, who is not regarded in a court of equity as a purchaser, in the full extent of the term, but as an equitable incumbrancer, having the advantage of a legal title. It is also true as to a mere equitable incumbrancer, who has not the legal title, but who has the preferable right to call for the legal title; as a creditor whose debt is secured by a deed of trust. I think the principles of equity require us to go one step further, and to protect from this secret lien of the vendor all subsequent equitable incumbrances, however acquired, provided they be acquired for valuable consideration and without notice. What is the principle of justice, that exempts from the lien of the vendor, a subsequent purchaser ? It is, that he has made his contract and paid his money, without notice. His acquisition of the legal title, does not add to the justice of his claim, the weight of a feather. In justice, then, the equitable incumbrancer stands on the same ground with the purchaser of the legal title; for he also has made his contract, and has paid his money, without notice of the secret lien of the yendor. I do not think it necessary to fortify the equity of a mere incumbrancer, by shewing that he has a legal advantage or preferable right to call for the legal title : he has an equitable lien on the land : that is sufficient for his purpose. It is not to be affected by the lien of the vendor; because, even as to the mere equitable incumbrancer, the vendor has no equity. It is on this ground that *605 I think Murrell Sf Meem must prevail in this controversy. Í place no reliance on their having a legal title to the bonds, although Í do think they have such title. That is not the sort of legal advantage of which the cases speak : the legal advantage there spoken of, is, I think, some advantage as to the land : but the only legal advantage, which the assignment of the bonds gave to Murrell fy Meem, was a legal title to the bonds, and the right to sue at law, in their own names: as to the land, the assignment gave them no legal advantage whatever; as to the land, their claim was purely equitable. True, they might have sued at law on the bonds, but that did not strengthen their claim to the lands.
The doctrine of lien, if thus understood and enforced, will have a just operation, and be freed from the reproaches so frequently cast upon it.
Murrell &f Meem, ought, therefore, to be made parties, thpy being the parties interested to contest the claim asserted by the appellees; and, if in the controversy between them and the appellees, their case shall turn, as it now appears, that they acquired these bonds, bond fide, by assignment for valuable consideration, and gave Franklin notice of the assignment, before they had any notice of the equity asserted by the appellees, their claim to the money due on the bonds ought no wise to be affected by that equity.
Tucker, P.
I shall consider this case, as if there had been an ordinary sale for money by Hancock to Moore, a deed made, and part of the purchase money in arrear; reserving for some other occasion the inquiry, whether the vendor’s lien extends farther than to secure the payment of purchase money; in other words, whether it can be extended to secure the performance of covenants to do some collateral act as the consideration of the sale.
In the view I take of the case, the material facts are simply these: Moore, after his purchase from Hancock, sold the land to Franklin, executed a deed to him, received his bonds for the purchase money, and assigned them to Mur *606 rell &f Meem, all which occurred before Franklin had any . intimation of the claim of Hancock. On hearing of the claim, he determined to retain the purchase money, until it should be decided, whether Hancock, or the assignees of the bonds, had the best right to it. He has, therefore, been in no default, nor has he at all committed himself, for Murrell &f Jlieem.did not take the assignments upon any assurance of payment from him. They never applied to him until after the assignment. It is obvious, therefore, that there is no pretense for making him pay it twice : so that the question is really between Hancock and the assignees, which shall have this portion of the purchase money yet in the hands of Franklin. In other words, whose is it? Does it belong to Hancock by virtue of his implied lien, or to the assignees who have purchased the bonds without notice of the arrears due to Hancock ? I think the latter have the best right.
Where the vendee of land still retains the estate it is clearly liable for the whole of the unpaid purchase money by virtue of the vendor’s lien. Where he has sold to a sub-vendee, and the title has been made by him, and the money paid before notice of the original vendor’s lien, the sub-vendee holds discharged of'that lien. Where, however, a part of the purchase money is unpaid by the subvendeq, the land in his hands is liable for that unpaid portion, but for no more. The equity is, that he shall pay to the original vendor whatever he himself yet owes to his own vendor. If he owes any thing, he, and his land, are discharged, upon his paying up that to the original vendor’s demand; and if he owes nothing, neither himself nor his land is in any wise responsible.
Try this case by these principles.' Was any thing due from Franklin to Moore (when he received notice of Hancock’s claim) which equity demanded that he should pay over to Hancock instead of Moore ? JYothing was due. His bonds, indeed, had been due to Moore, but Moore had sold them, for value, to persons who knew no *607 thing of the vendor’s pretensions. From the moment of that sale, Franklin ceased to owe Moore any thing, tie became the debtor of the assignees; and as he owed Moore nothing, he could be liable to Hancock for nothing, as has been already shewn.
It is true that assignees take every bond subject to the obligor’s equity against the obligee ; but I have yet to learn, that they take subject to an unknown equity of a stranger against the obligee. The equity set up by an obligor is against the bond : it is to avoid the bond. But the equity of Hancock is not to discharge or vacate, but to enforce, the bond, for his benefit. Can it be possible that the assignees take subject to this equity? They bought, indeed, subject to any equityof Franklin against Moore;—subject to the equity of Moore’s debtor against the bond, but surely not subject to any supposed equity of his creditor to enforce it, of which equity they had no notice.
That the vendor’s lien is lost as to the land by a sale to a subsequent vendee without notice, is clear. And if he has any lien upon the bonds given by the sub-vendee, why should not that lien also be lost by a sale of the bonds without notice ? I can see no reason for the distinction ; for as the assignee has possession of the bonds, and has by law a legal right to sue for them in his own name, and has therefore complete power to enforce payment at law, it is very clear that he has the legal' advantage. Shall equity take away this legal advantage from a fair purchaser without notice ? I think not. Murray v. Lylburn, 2 Johns. C. R. 441. Livingston v. Dean, Id. 479.
I am, therefore, of opinion to reverse the decree; and if the ihcts distinctly appeared in evidence as to the assignment, I should direct a dismission of the bill. In the present aspect of the case, I think it better to send it back, with directions that Murrell Meem be made parties, as the real contest is between them and the appellants. If the appellants refuse to make them parties, then their bill should be dismissed for want of proper parties.
*608 The decree, entered by the court declared, that if Murrell 8f Meem took the assignment of Franklin’s bonds from Moore, and gave notice of the assignment to Franklin, before they received any notice of Hancock’s claim to charge the land with the unpaid balance of the purchase money due to him from Moore; in such case, if Hancock might otherwise have had a just claim in equity, so to charge the land with the balance of the purchase money due to him from Moore, that right was lost, and the assignees Murrell Meem, had a preferable right to the amount of Franklin’s bonds assigned to them ; that Murrell &f Meem, being thus parties in interest, ought to be made parties defendants in the cause; and that the chancellor erred in decreeing in favor of the appellees, before Murrell 8f Meem were brought before the court to assert their rights : Therefore, the decree was reversed, with costs, and the cause remanded to be further proceeded in, according to the principles here declared.