## WRIGHT & CO. *et al. v.* LEVY *et al.*

A non-negotiable *chose in action* created by the immediate parties to it, for the purpose of defrauding creditors, cannot be impeached in the hands of an innocent assignee by the creditors of the debtors making such *chose in action.*

The assignee of a judgment is only the holder of an equity, with the right to use the judgment and the name of the plaintiff to enforce it, and he stands in the shoes of the assignor as to all defenses which existed against the judgment between the parties to it.

A judgment is property which may be purchased like any other property. The purchaser is bound to inquire into the defense of the debtor. He has the means to do this; but he could not be held to inquire into *latent* equities existing in the hands of third persons; and hence, as to third persons, he stands unaffected by frauds of which he had no knowledge, express or constructive.

On rehearing: L executed and delivered his promissory note to N, without consideration, and for the purpose of defrauding, hindering and delaying his creditors. N had knowledge of the fraud, and was a participant in it. Subsequently, N sued out an attachment upon the note, and had it levied upon L's property. After this levy, W and others, creditors of L, obtained attachments, and had them levied upon the same property. Pending these attachments, and before judgment, N, for a valuable consideration, assigned the note upon which suit was then pending to J, who knew nothing of the original fraud; *Held,* That J is not protected in his purchase. N, having been superseded by W's attachment, could not, by any act or deed of his, put his assignee in any better position than he occupied himself. N's attachment was void as against W, a creditor of L, and the question is as to the relative equities of J and W, and not as to the equities of third persons.

APPEAL from the Sixth District, County of Sacramento.

This was an action brought in the Court below to set aside a judgment rendered therein in favor of John Jones, assignee of Marcus Newmark, and against Davis Levy, upon the ground of fraud, and for an injunction to restrain the collection of the same, etc.

The bill of exceptions discloses the following facts: Davis Levy executed and delivered a promissory note to Marcus Newmark. The note was given without consideration, and for the purpose of hindering, delaying and defrauding the creditors of Levy. Newmark was cognizant of the fraud, and a participant in it. Subsequently, Newmark sued out an attachment upon this note, and had it levied upon the property of Levy. After the levy of this attachment, the plaintiffs, Wright & Co. and others, creditors of Levy, also sued out attachments,

and levied them upon the same property. After this second levy, and pending the suit of Newmark, he sold and assigned for a valuable consideration the note executed by Levy, together with the action then pending on it, to the defendant, John Jones. Jones was an innocent purchaser, and knew nothing of the fraudulent intent of the parties to the note. The suit upon the note, together with those of the plaintiffs and creditors of Levy, went to judgment. Thereupon Wright & Co., together with others, creditors of Levy, filed this bill against Levy, Jones and others, setting up the fraud and praying an injunction against the collection of Jones' judgment, and that plaintiffs may be adjudged entitled to the money arising from the sale of the property now in the hands of the Sheriff. The Court below dismissed the bill, and gave judgment for defendant, Jones, from which the plaintiffs appealed to this Court.

*Mesick & Swezy* for Appellants.

I. The equities of the plaintiffs in the case are superior and prior to those of defendant Jones. Parsons on Contracts, 192—199 ; Vol. 2, pt. 2 Leading Cases in Equity, p. 237, and authorities there cited ; 1 Green Ch. (N. J.) 258 ; 2 Met. 138 ; 6 Mass. 244 ; 7 Monroe, 477 ; 1 Paige, 131 and 319 ; 2 John. Chy. 512 ; 3 Bland Ch. (Md.) 514, 540 ; 6 Hump. (Tenn.) 93 ; 25 Vermont, 487 ; 11 Paige, 469 ; 6 *Ib.* 109 ; 3 Hill, 231 ; 10 Cal. 354 ; 2 Murphy, (N. C.) 30 ; 3 Monroe, 71 and 510 ; Clark v. Elvey, Opinions Sup. Ct., Oct. T., 1858, p. 284 ; 12 Pick. 388 ; 3 Geo. 145 ; 7 Pick. 547.

1. Superior, because as creditors they have a right in equity to represent their debtor. Theirs are not simply " equities against the assignor." 1 Hopkins, 583 and 584 ; 29 Maine, 160.

2. Prior, because their attachments were prior to the assignment.

II. The " assignment" of the note to Jones by Newmark made it no more available in the hands of the former than it was in the hands of the latter. Vol. 2, pt. 2, Leading Cases in Equity, 236, and authorities cited ; Authorities cited above ; 3 Story R. 391 ; 6 Halstead, 116 ; 1 Rich. Eq. 49 ; 18 Eng. Com. Law and Equity, 95 ; 10 Mod. 450, affd. in 1 P. Wms. 496 ; 18 Ills. 495 ; 20 Maine, 89 ; 14 Vermont, 387.

Wright & Co. *v.* Levy.

III. The note in the hands of Newmark was void as to plaintiffs; and all the proceedings thereon took their character from that of the demand upon which they were predicated. 12 Pick. 388; 7 *Ib.* 542; 22 *Ib.* 545; 25 Vt. 491; 2 John. Ch. 512; 7 Cal. 352; 10 *Ib.* 227; Drake on Attachments, secs. 770—793; 6 Paige, 108; 4 Wend. 100; 3 Met. 49.

IV. Under the circumstances Jones is chargeable with notice of the infirmities of the claim assigned to him by Newmark. 3 Story's Rep. 388 and 389; 5 John. Ch. 427; 2 Cowan, 289.

V. Jones is not entitled to be considered a *bona fide* holder of the claim, having taken it burthened with a lawsuit for its collection.

*Moore & Welty* for Respondent Jones.

The statutes of 13 and 27 of Elizabeth and New York, contains a proviso similar in effect to that contained in the twenty-fourth section of our Act. In fact, ours is a transcript of the New York statute, and that Act was taken from the British statutes, and modified only in phraseology.

The statute of 13 of Elizabeth, ch. 5, provides: " That this Act, or anything contained therein, shall not extend or be construed to impeach, defeat, make void or frustrate any conveyance, etc., of, in, to or out of any lands, etc., goods or chattels, at any time heretofore had or made, or to be made upon or for a good consideration, and *bona fide* to any person, etc., not having at the time of such conveyance or assurance, made any manner of notice or knowledge of the covin, fraud or collusion, as aforesaid."

The statute of frauds, as it originally stood in England, did not contain this proviso; but the Courts and the people soon found that something must be done to protect innocent third persons who had purchased of a fraudulent grantee without notice of the fraud, and hence the insertion of the above clause.

Since the enactment of the statute of 13th of Elizabeth, the Courts of England have been frequently called upon to decide controversies between innocent purchasers from fraudulent grantees and the creditors of the fraudulent grantors, and so far as we are aware, the decisions have uniformly been in favor of the former.

In discussing this statute, in Cadogan v. Kennett, (Cowp. 434) Lord Mansfield remarked that "such a construction is not to be made in support of creditors as will make third persons suffer. Therefore, the statute does not militate against any transaction *bona fide* made, and when there is no imagination of fraud, and so is the common law."

The same doctrine prevailed in Doe v. Martyr, (1 New Rep. 332) and had long prior to that case been recognized by Lord Kenyon, in Parr v. Eliason, 1 East. 95.

George v. Wilbank, (9 Ves., p. 190) is a leading case, involving directly the question under discussion here. That was a contest between a *bona fide* purchaser of personal assets from a fraudulent vendee, and the creditors of the vendor. After a full and most able discussion of the question, Lord Elden concluded as follows : " The claims of the *bona fide* purchaser for a valuable consideration, must be sustained as against the creditor."

In Prodgers v. Langham, (1 Sid. 133) the general principle is laid down, that " if a fraudulent grantee convey to a *bona fide* purchaser for a valuable consideration, it· is good, and purged of the fraud by matters *ex post facto.*"

Mr. Roberts, in his learned work on Fraudulent Conveyances, (p. 497) after fully discussing the question, and citing and reviewing numerous authorities, concludes as follows : " The valuable consideration, whenever it occurs, entirely obliterates the fraud, so that it can never again, in any shape, affect the transactions."

With, perhaps, one exception, the Courts of this country have followed the rule laid down in England upon this subject.

Chief Justice Thomson, in the case of Jackson *ex dem.* Merit v. Terry, (13 John. Rep. 471) admitted that the conveyance from J. Turner to A. Turner was a gross fraud, and made expressly to avoid Hubbard's judgment ; but that the lessor being a *bona fide* purchaser from A. Turner, without knowledge of the fraud, he was not to be prejudiced by it.

Mr. Story, in his treatise on Equity Jurisprudence, (vol. 1, sec. 434) under the head of Constructive Frauds, says : " Courts of Equity never interpose at all when the property has been conveyed by the voluntary or covenous grantee to a *bona fide* purchaser for a valuable

consideration, without notice. Such a person is a favorite in the eyes of Courts of Equity, and is always protected against claims of this sort."

The reason for this doctrine is well illustrated by Chief Justice Marshall, in Fletcher v. Peck, (6 Cranch. 133) as follows: "If a suit be brought to set aside a conveyance obtained by fraud, and the fraud is clearly proved, the conveyance will be set aside as between the parties; but the rights of third persons, who are purchasers without notice, for a valuable consideration, cannot be disregarded."

In the case of Anderson v. Roberts, (18 John. Rep. 527) Chief Justice Spencer collects and reviews all the authorities upon this subject, and discusses the question with marked learning and ability. In the course of his opinion he remarks: "The grounds adopted by the Courts for protecting *bona fide* purchasers, without notice, is solid and substantial, and applies with equal force to both descriptions of grantees."

In the same case, Justice Platt, among other things, says: "A *bona fide* purchaser under a fraudulent grantee, without notice, either actual or constructive, acquires a good and valid title, purged of the original fraud, as against creditors."

"Though a sale of goods made fraudulently, and without consideration, may be void as to the creditors of the vendor, yet if prior to their attachment the goods passed into the hands of a *bona fide* purchaser not cognizant of the fraud, and for a valuable consideration, the latter would be entitled to hold." Trote *et al. v.* Warren, 11 Maine Rep. 227; Sparron v. Chelsy, 19 Maine Rep. 79; Fletcher v Peck, 6 Cranch. Rep. 133; Rowley v. Bigelow, 12 Pick. Rep. 306; Hoffman v. Noble, 6 Metk. Rep. 68; Story's Eq. Jurisprudence, vol. 1, sec. 434; Dallam's Dig., Texas, p. 418.

When Jones purchased this note and paid out his money, Newmark was the holder of it, and appeared to be honestly the owner. Jones saw that the note was fair upon its face, and paid out his money without a suspicion that anything was wrong, and ought to be protected.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The answer of defendant Jones, denying all collusion with the plaintiff, in the judgment transferred to him, and asserting that he is a pur-

chaser in good faith and for value of the judgment, raises the question whether a chose in action, not negotiable by the law merchant—the chose having been procured or created by the immediate parties to it to defraud creditors—can be affected or impeached in the hands of any innocent assignee, by the creditors of the debtors making it. We think, with the learned Judge below, that it cannot. It is conceded that the assignee of the judgment is only the holder of an equity, with the right to use the judgment and the name of the plaintiff to enforce it, and stands in the shoes of the assignor, as to all defenses which existed against the judgment between the parties to it. It is like a note assigned after due, the rule as to which is thus laid down in Story on Bills, (sec. 220, p. 260): "In the next place, as to the time of the transfer. In general, it may be stated that a transfer may be made at any time while the bill remains a good, subsisting, unpaid bill, whether it be before or after it has arrived at maturity. But the rights of the holder against the antecedent parties, may be most materially affected by the time of the transfer. If the transfer is made before the maturity of the bill, to a *bona fide* holder, for a valuable consideration, he will take it free of all equities between the antecedent parties, of which he has no notice. If the transfer is after the maturity of the bill, the holder takes it as a dishonored bill, and is affected by all the equities between the original parties, whether he has any notice thereof or not. But when we speak of equities between the parties, it is not to be understood, by this expression, that all sorts of equities existing between the parties, from other independent transactions between them, are intended, but only such equities as attach to the particular bill, and, as between these parties, would be available to control, qualify, or extinguish any rights arising thereon. Still, however, subject to such equities, the holder, by indorsement after the maturity of the bill, will be clothed with the same rights and advantages as were possessed by the indorser, and may avail himself of them accordingly."

The judgment is property, which may be purchased like any other property. The purchaser is bound to inquire into the defenses of the debtor. He has the means to do this ; but he could not be held to inquire into latent equities existing in the hands of third persons. The law, when it made this sort of property subject to sale, gave it the pro-

tection which it extends to all other property.   It is only by force of the Statute of Frauds that the judgment or sale of it could be avoided at the suit of the creditor, or by force of common law principles, of which the statute is an affirmance.   But neither this statute nor these principles affect an innocent purchaser, nor an innocent purchaser of equities, any more than of legal estates.   *Between the parties*, the assignee of equities stands in the place of his assignor, with no better rights; but as to the claims of third persons, the purchaser of an equity stands unaffected by frauds of which he has no knowledge, express or constructive.   No authority has been cited which supports the ground taken by appellant, while the general principle which we have announced is asserted in many cases.

The judgment is affirmed.

At the April Term, 1859, a reargument was had in this case, and the Court, by BALDWIN, J., and TERRY, C. J., concurring, rendered the following opinion :

On rehearing :   The opinion which we delivered in this case at the last term is correct in principle.   We erred, however, in assuming that the assignment was of a judgment of Levy, and made by Newmark to Jones before the attachment of the plaintiff was put upon the property of the defendant.   It now appears, that after Newmark's attachment was levied, the plaintiff got out an attachment on his debt, and it was levied on the same property as Newmark's; and that pending these attachments, and before judgment, Newmark assigned the note and the lawsuit to the defendant Jones.   It is found by the Court that this note, attachment, etc., of Newmark's were fraudulent, but that the fraud was not known to Jones, who bought for value.   The question then comes up whether Jones is protected in his purchase ?   We think, on this hypothesis of fact, he is not.   Newmark's proceedings were all void against the plaintiff.   The plaintiff by his levy took the property subject only to the superior rights or the claim of Newmark.   He had, under the assumed facts, the real title as against Newmark.   In this condition Jones buys; but Jones has only the right Newmark had. Newmark having been in fact superseded by the plaintiff, could not by any deed or act of his put his assignee in any better position.   The

question is not as to the equities of third persons; the question is as to the relative equities of Jones and Wright; and it seems Wright has, as against Jones, the oldest equity and the legal title. While the property was legally subject to his claim, Wright subjected it by his attachment; his title then vested, so to speak. No act of Newmark subsequently could divest it. All this is said on the assumption of the fraud of the Newmark proceedings; for the effect of that fraud unquestionably is to make those proceedings nullities as against Wright. When they were nullities, Wright levied on the property, and, of course, his title dating from the levy is superior to Jones' title dating from the subsequent assignment to him by Newmark. None of the authorities cited by the respondent's counsel apply to such a case as this. The principle of the case of Anderson v. Roberts (in 18 Johnson R. 531) is analogous, and two or three cases in Alabama are the same way. It is true that the case in 18 Johns. only holds that after a sale on execution of real estate fraudulently conveyed, the sale being made of it as the property of the fraudulent grantor, an innocent grantor takes no title; but the effect of a levy on chattels is not less decisive in changing the title and vesting it in the Sheriff as trustee for the creditor. After it does so vest, a sale by the fraudulent vendee cannot alter it. The Alabama cases go further, and hold that after the lien of a judgment attaches to property fraudulently conveyed, the lien of the creditor carries the title against a conveyance subsequently made by the fraudulent vendee.

The question is not whether, when Jones took the assignment of the note, he took a good title as against third persons to the note; but whether, when he took, as incident to the note, a title or claim to the property attached, he took a superior right to the plaintiff, who had an older and better claim on it? If, by operation of law, Wright's claim to this property was superior to Newmark's, Wright was as much entitled to priority over Jones, as if his right was given by contract.

We therefore reverse the decree on the finding. We think, however, the case has not been fully tried below, and we remand it that some irregularities may be cured, and an opportunity given to try the case *de novo* on such amendments of the pleadings as may be desired.

Ordered accordingly.