[No. 19501.  Department One.—April 5, 1895.]

FIRST NATIONAL BANK OF BRIDGEPORT, OHIO, APPELLANT, v. PERRIS IRRIGATION DISTRICT, DEFENDANT AND RESPONDENT,' AND CORONADO FOUNDRY AND MACHINE COMPANY ET AL., INTERVENORS AND RESPONDENTS.

BUILDING CONTRACT—RIGHT OF MATERIALMAN TO GIVE NOTICE—TIME OF NOTICE—ASSIGNMENT BY CONTRACTOR—CONSTRUCTION OF STATUTE.—Under section 1184 of the Code of Civil Procedure a materialman may give notice to the reputed owner of the structure of his claim for material furnished at any time before money falls due under the contract, and no assignment made by the contractor of an amount to become afterwards due to him in the course of performance of the contract can, before the arrival of the time of payment, defeat the right of the materialman to give the notice provided for in the statute and to obtain the benefit thereof; and the notice may be effectually given so long as the money is owed to the contractor himself, although the time when it should have been paid is passed.

ID.—ASSIGNMENT BY WAY OF SUBSTITUTE FOR ORIGINAL CONTRACTOR.—An assignment made by the original contractor to another person or company before the completion of the work vests in the assignee, prior to the expiration of thirty-five days from the date of the completion of the work, no rights different from or superior to those of the original contractor.

ID.—ASSIGNMENT OF BALANCE DUE UNDER CONTRACT—LOSS OF RIGHTS OF MATERIALMAN.—An assignment made of the balance of the contract price after it has become due and payable under the terms of the contract, with notice to the reputed owner of such assignment, cuts off all rights of materialmen in the funds so assigned, and any notice afterwards given by a materialman is futile, provided the assignment was without notice of the unpaid demand.

ID.—ASSIGNEE IN GOOD FAITH NOT SUBJECT TO LATENT EQUITIES.—An assignee of a sum due, who purchases in good faith and for value, takes the assignment free from the latent equities of third persons of which he has no notice.

ID.—PRESUMPTION UPON APPEAL—NOTICE—FINDINGS.—It cannot be presumed upon appeal, in support of the findings and judgment, that no notice other than that expressly found by the court, and prior to it in point of time, was served on the owner of the structure.

ID.—CONTRACT—FINDING—PRESUMPTION OF VALIDITY.—Where the court finds that a contract was entered into and that it was performed it cannot be presumed upon appeal, without proof, that a contract was void for want of filing, or for any other reason.

ID.—NOTICE OF CLAIM OF MATERIALMAN—LIEN—INTERCEPTING OF CONTRACT PRICE—LIMITATIONS.—A materialman is not required to record notice of his claim in the office of the county recorder, as in case of claiming a lien against the building or structure, in order to avail him-

self of the remedy provided for by section 1184 of the Code of Civil Procedure for intercepting the contract price in the hands of the owner by notice, and the validity of such notice is not dependent upon proceedings to enforce a lien upon the property affected by the contract, nor is such notice subject to the limitation provided for by section 1190 of the Code of Civil Procedure.

ID.—BUILDING CONTRACT—ENTIRETY—LIMITATION OF ACTION—RUNNING OF STATUTE.—Where a materialman has an entire contract with the contractor to furnish all the iron couplings to be used in the construction of a pipe line at a fixed rate per pound he cannot enforce payment for any part of the couplings until all necessary for the use indicated have been furnished, or offered to be furnished, and the limitation for action upon the contract does not begin to run until the last delivery of couplings under the contract in performance of the agreement.

ID.—REMOTE CHARGES AGAINST CONTRACT PRICE—VALUE OF PATTERNS AND BOXES.—The value of patterns used in the manufacture of couplings by a materialman and the value of the boxes in which the couplings were cased for shipment to the contractor cannot be properly included as separate charges from the price of the couplings, where both the patterns and boxes remained the property of the materialman, and were not incorporated in the structure, and such charges are too remote from the actual work of construction to permit their cost to be made a charge against the contract price in the hands of the owner of the structure.

ID.—COUNTERCLAIM—EXPENSE OF KEEPING STRUCTURE IN REPAIR—INSUFFICIENT PLEADING—A counterclaim by the owner of a building against the contractor for the expense of keeping the structure in repair during the period of one year after completion, as required by the contract, is not sufficiently pleaded by an averment, made after the period of one year had elapsed, that the owner will be required to expend more than the sum specified for that purpose.

ID.—NOTICE OF ASSIGNMENT—COUNTERCLAIM—INDEPENDENT COVENANTS. Expenditures by the owner of the structure, for repairs which the contractor had agreed to make for one year, incurred subsequent to notice of assignment of the balance due upon the contract price, cannot be counterclaimed against the assignee; but the agreement of the owner to pay the contract price in thirty-five days after completion of the contract is independent of the engagement of the contractor to keep the structure in repair for one year after such completion.

ID.—EFFECT OF NOVATION—SETOFF.—A mere novation of the original contract for the completion of the structure by assignment to another contractor would not affect the right of setoff or counterclaim as against the original contractor.

APPEAL from a judgment in the Superior Court of San Diego County.

The facts are stated in the opinion of the court.

*Trippet, Boone & Neale, Trippet & Neale,* and *L. L. Boone,* for Appellant.

*Parrish & Mossholder,* for Respondent Coronado Foundry and Machine Company.

*Crowe & Anderson,* for Respondent Perris Irrigation District.

*C. B. Morris,* and *W. R. Guy,* for Respondent W. L. Ewing.

The Court.—Plaintiff, a corporation, commenced this action July 22, 1893, to recover of defendant a sum of money alleged to be due the plaintiff under an assignment of a claim therefor to it made by the Ætna Iron and Steel Company, also a corporation, on May 16, 1893. The defendant is an irrigation district formed under the statute providing for the organization and government of such districts, approved March 7, 1887. One W. L. Ewing filed a complaint in intervention, but the findings and judgment were against him, and he has not appealed. The case comes here on the judgment-roll alone.

From the record it appears that on March 26, 1891, defendant made a contract with the Silver Gate Manufacturing Company, a corporation, whereby such company agreed to construct for defendant a line of wood pipe 6.5 miles in length, and to keep the same in repair, free from leakage, for the period of one year after the completion thereof; the price to be paid by defendant for such work was by the contract made payable thirty-five days after the completion of the pipe line. The construction of such pipe was completed by the Silver Gate Manufacturing Company, or by said Ætna Iron and Steel Company, acting for and in the stead of said manufacturing company, on the ninth day of January, 1893. Previously, on September 14, 1892, said manufacturing company, the original contractor, assigned its claims due, or to become due, on account of the contract to the said Ætna Iron and Steel Company.

On May 2, 1893, the defendant by its board of directors allowed and approved the account of the Ætna Iron

and Steel Company, as assignee of the original con-
tractor, for the balance due under the said contract,
amounting to the sum of $11,692.05; of which amount
$7,500 was paid, and the sum of $4,192.05 remains
unpaid, and is the subject of this action; the demand
of said Ætna Iron and Steel Company for such bal-
ance was assigned to plaintiff May 16, 1893, as stated
above.

The interest of the intervenor, Coronado Foundry
and Machine Company, arose in this wise: Subse-
quently to March 26, 1891, the date of the contract,
said intervenor entered into an oral agreement with
the contractor, the Silver Gate Manufacturing Com-
pany, whereby said intervenor promised to furnish to
the contractor all the iron couplings to be used in the
construction of said pipe line, the quantity of such
material so to be furnished being not otherwise speci-
fied, at the price of 4¼ cents per pound, which price the
contractor agreed to pay. The court found that such
agreement " also included the making by said inter-
venor of all patterns for said couplings and the fur-
nishing of boxes in which to ship said couplings, said
Silver Gate Manufacturing Company agreeing to pay
the reasonable value of said patterns and boxes to said
intervenor." No time of payment was specified in said
agreement.

The intervenor made such patterns to the value of
$111 05, and boxes to the value of $99.05. Patterns,
boxes, and couplings were made and supplied by the
intervenor to the contractor in divers quantities and at
divers times, from April 13, 1891, to November 9, 1891
(except a single item of patterns, amounting to $7.65,
found to have been furnished February 19, 1891); the
last item of couplings, $10.60 in amount, being supplied
November 9, 1891. The couplings were actually used
in the construction of the pipe line, but no patterns or
boxes were so used; it seems that the patterns were used
by the intervenor in moulding the couplings at its own
works, and were necessary for that purpose; they were

charged to the contractor, though it never had actual possession of them; the boxes were necessarily employed in the shipment of the couplings from the place of manufacture to the place of use.

Payments were made to the intervenor on account in the month of July, 1891, amounting to $300; and on October 26, 1893, after this action had been begun, said intervenor served written notice on the defendant that it, the intervenor, " furnished materials to the Silver Gate Manufacturing Company, to be used, and which actually were used in the construction of the pipe line for the Perris Irrigation District, under the contract between the said Perris Irrigation District and the said Silver Gate Manufacturing Company; that said material was cast couplings to be used in the construction of said pipe line, and that the value of the materials so furnished was $2,439.58"; also that only $300 had been paid on account thereof, and that a balance of $2,139.58 remained due and unpaid; and required defendant to retain in its possession sufficient funds due under its contract with the Silver Gate Manufacturing Company to pay such balance.   A few days later, November 4, 1893, said intervenor filed its complaint in intervention herein.

The plaintiff pleaded, among other defenses to intervenor's action, that the same is barred: 1. By the provisions of subdivision 1 of section 339 of the Code of Civil Procedure; 2. By the provisions of section 1190 of the same code.

Regarding the controversy between plaintiff and defendant the court found that default was made in performance of that term of the contract between defendant and the Silver Gate Manufacturing Company, by which the latter agreed to keep the pipe in repair for one year after the completion thereof, and that defendant necessarily expended for that purpose during such period, from January 9, 1893, to January 9, 1894, the sum of $1,223.15.   The only averment in the pleadings setting up a counterclaim for this sum is contained in the de-

fendant's answer filed January 13, 1894, and its most material language is that defendant "will be required to expend more than the sum of $4,192.05 withheld by defendant herein to keep said pipe line in repair for one year from its completion."

The court gave judgment in favor of the intervenor, Coronado Foundry and Machine Company, for the amount of its demand — $2,139.58 — and in favor of plaintiff for $829.32, besides interest from February 13, 1893; the remainder of the fund in the hands of defendant, $1,223.15, being allowed to it in virtue of the counterclaim referred to.    Plaintiff appeals.

1. Was the notice served on defendant by the inter-venor, October 26, 1893, in sufficient time to fix the right of the intervenor in the fund yet remaining in the hands of defendant?   Such notice was given more than eight months after the completion of the contract for the construction of the pipe, more than seven months after the balance due under said contract became payable according to its terms, more than one year after the original contractor had assigned its rights to such balance, and more than three months after plaintiff, as a subsequent assignee thereof, had commenced this action to recover the same.   Appellant maintains that, these circumstances considered, the notice was too late.   The decision of this question turns upon the proper construction of the statute (Code Civ. Proc., sec. 1184) as amended in 1887; what that construction should be is not discussed in the briefs filed on behalf of either the intervenor or the defendant.   Said section 1184 provides that: "Any of the persons mentioned in section 1183, except the contractor, may at any time give to the reputed owner a written notice that they have performed labor or furnished materials, or both, to the contractor, or other person acting by authority of the reputed owner, or that they have agreed to do so, stating in general terms the kind of labor and materials, and the name of the person to or for whom the same was done or furnished, or both, and the amount in value, as near as may

be, of that already done or furnished, or both, and of the whole agreed to be done or furnished, or both. . . . . Upon such notice being given it shall be the duty of the person who contracted with the contractor to, and he shall withhold from his contract or . . . . sufficient money due, or that may become due to such contractor or other person, to answer such claim." The intervenor is a materialman within the category of persons authorized to give such notice; and by the wording of the section those persons "may at any time give" the specified notice. It seems reasonable to say that no assignment made by the contractor of the amount to become afterward due to him in the course of performance of the contract could, before the arrival of the time of payment, defeat the right of the materialman to give the notice in question and obtain the benefit thereof; if an assignment so made could have that effect, then the provisions of the statute in this regard could in most cases be evaded. The section requires the owner on receipt of the notice to withhold sufficient money "due, or that may become due," to answer the claim; and doubtless the notice may be effectually given so long as the money is owed to the contractor himself, although the time when it should have been paid has passed. (*Board of Education* v. *Blake* (Cal., Dec. 3, 1894), 38 Pac. Rep. 536.) In this case the contractor assigned his claim, September 14, 1892, and before the completion of the work, to the Ætna Iron and Steel Company, and the defendant on May 2, 1893, audited and approved the claim of such assignee for the balance of the contract price then unpaid. The Ætna company then had at least the rights of the original contractor.

After the expiration of thirty-five days from the time of completing the contract the Ætna company was, therefore, by the terms of the contract, entitled to be paid the full amount of the contract price then remaining unpaid. As has been seen, a portion of this price was paid in May following, and on the 16th of that month the claim for the residue was assigned to plaintiff. Un-

doubtedly the plaintiff then had the right to receive the unpaid balance of the money; and if payment had actually been made at any time after it was due and before the intervenor served its notice of October 25, 1893, such payment would have been valid and the intervenor could not have pursued the fund in the hands of the plaintiff or held the defendant liable in any way on account thereof. There is nothing in the record to show that plaintiff possessed any information that the intervenor had or claimed even a contingent interest in such fund, or knew that any thing was unpaid for work or materials used in the construction of the pipe. Why should the assertion by intervenor of its latent equity, months after the assignment, toll plaintiff's right to the money, and make the act of payment unlawful which had before been lawful? The law does not require that the assignee for value of a thing in action shall take it subject to the latent equities of third persons of which he has no notice; but only that the assignment shall be subject to the equities existing in favor of the debtor—in this case the defendant. (Code Civ. Proc., 368, 440; Civ. Code, 1459; *Wright* v. *Levy*, 12 Cal. 257.)

If the contractor, previous to the giving of the notice, has transferred to another, who takes the assignment for value and without notice of the latent equities of the materialman, the amount then actually due and payable on the contract, there is then nothing either due or to become due to him, and there is no fund on which the notice can operate. It is true that the statute declares that the materialman or other person dealing with the contractor may give the notice "at any time"; but this expression must be construed in connection with the other provisions relating to the subject and the general scheme of the code chapter of which they form a part. That chapter contemplates throughout that the privileges it allows to those who furnish material or labor for the construction of buildings and other improvements shall be exercised with promptitude, and so as not to hamper either the owner or the contractor, or those who deal

with them, in the free disposition of the property rights affected by or arising from the contract beyond such time as may be convenient for the assertion of those privileges. It cannot be supposed that the legislature, while requiring a portion of the contract price to be withheld from the contractor for the period of only thirty-five days after the completion of the contract, and making it incumbent on the materialman desirous of acquiring a lien to give public notice thereof by filing his verified claim therefor in the proper office within thirty days from the actual or presumed completion of the structure or other work, and to begin his action in the proper court for the enforcement of his claim within ninety days following the filing, yet designed that the same materialman may, without imparting notice in any manner to the public, retain a latent lien for an indefinite time after completion of the contract and after payment is due thereunder on the compensation earned by the contractor, and that this secret equity "may at any time" be asserted not only against the contractor but also against those who have acquired his property interests therein by assignment or otherwise.

We hold in this behalf: 1. That the right of the intervenor to give the notice of its demand, and thus to charge the contract price in the hands of the owner, was not affected by any assignment made by the contractor until after the time when the demand assigned became due, in this case upon the expiration of thirty-five days from the completion of the contract; 2. That the assignment made by the original contractor, the Silver Gate Manufacturing Company, to the Ætna Iron and Steel Company, before the completion of the work, vested the latter company, prior to the expiration of thirty-five days from the date of such completion, with no rights anywise different from or superior to those of the original contractor, nor even then if such assignment was made as part of a mere substitution of the Ætna company for the contractor in the original contract—a matter on which the findings are not clear;

3. But that the assignment by the Ætna Iron and Steel Company to the plaintiff of the contract price or the balance thereof, and notice to defendant of such assignment after the balance was due and payable under the terms of the contract, cut off all rights of the intervenor in the fund so assigned, and any notice afterward given by the intervenor was futile, provided the plaintiff took such assignment for value and without notice of the unpaid demand of the intervenor. We think such proviso just; if the plaintiff was a mere volunteer or trustee for the Ætna company, or did not render value for the assignment, there is no reason why it should not stand precisely in the shoes of its assignor, subject to any right of the intervenor, within the doctrine asserted in *Bush* v. *Lathrop*, 22 N. Y. 536. This qualification of the immunity of the assignee is commonly found in the authorities which, with the better reason, as it seems to us, affirm the right of the assignee, in good faith and for value, to take the subject of the assignment free from the latent equities of third persons. *Redfearn* v. *Ferrier*, 1 Dow. 50, which Lord Eldon declared to be "a most important case" (*Livingston* v. *Deane*, 2 Johns. Ch. 480; *Mullison's Estate*, 68 Pa. St. 212; *Moore* v. *Holcombe*, 3 Leigh, 597; 24 Am. Dec. 683), and has, along with the rule it qualifies, been approved in this state. (*Wright* v. *Levy, supra.*)

The argument of the intervenor that it must be presumed in support of the findings and judgment that some notice other than that expressly found by the court, and prior to it in point of time, was served on the defendant, is without foundation. (*North Pacific R. R. Co.* v. *Reynolds*, 50 Cal. 90.) So of its contention that, since there is no finding that the contract of defendant with the Silver Gate Manufacturing Company was filed with the county recorder, it is therefore to be treated as void; and, as subsidiary consequences, that the defendant became personally liable to it, the intervenor, for the materials furnished (Code Civ. Proc. sec. 1183), and no notice of its claim was necessary. The court found that

a contract was entered into for the construction of the pipe line, and that it was performed; it will not be presumed in such case without proof that the contract was void for want of filing or for any other reason. Even if it were void, the consequence claimed—personal liability of the defendant in the sense that could uphold the judgment in favor of the intervenor—would not follow. (*Southern Cal. Lumber Co.* v. *Schmitt,* 74 Cal. 625.)

2. Our conclusion on the branch of the case above considered necessitates a reversal of the judgment in favor of the intervenor; but as there may be a new trial some other points presented should be noticed.

Appellant maintains that the intervenor should have filed notice of its claim in the office of the county recorder as in cases where a lien is claimed against a building or other structure under section 1187 of the Code of Civil Procedure. But the remedy provided by section 1184 of the same code for intercepting the contract price in the hands of the owner is not dependent upon proceedings to enforce a lien against the property affected by the contract. (*Bates* v. *Santa Barbara County,* 90 Cal. 547.) Counsel question the authority of that case, but we think it construes the statute correctly. For similar reason the intervenor's action was not barred by the provisions of section 1190 of the Code of Civil Procedure.

The contract of the intervenor was entire; it agreed to furnish to the contractor "all the iron couplings to be used in the construction of said pipe line" at a fixed rate per pound. (See 2 Parsons on Contracts, side page 519, and cases cited.) It could not have enforced payment in an action on the contract for any part of the couplings delivered until it had furnished all necessary for the use indicated, or had offered so to furnish the same and the contractor had refused the offer. (Civ. Code, sec. 1439.) The last delivery of couplings was on November 9, 1891, and appears to have been made in performance of the agreement of the intervenor with

the contractor. The complaint in intervention filed November 4, 1893, was therefore not barred by subdivision 1 of section 339 of the Code of Civil Procedure.

The court erred in allowing to the intervenor the value of the patterns used in the manufacture of the couplings and the value of the boxes in which such couplings were cased for shipment; both the patterns and the boxes were made the subject of separate charges by the intervenor and not included in the price of the couplings; they remained the property of the contractor and were not incorporated in the structure; in these respects, and perhaps others, differing from the cartage considered lienable in *West Coast Lumber Co.* v. *Newkirk*, 80 Cal. 275, as being included in the value of the materials furnished; we regard the boxes and patterns here as too remote from the actual work of construction to permit their cost to be made a charge in this action against the contract price in the hands of the owner.

3. There is no pleading on the part of the defendant sufficient to sustain the judgment allowing a counterclaim in its favor for the expense of keeping the pipe in repair during the period of one year after completion; the averment that "it will be required to expend more than" a sum specified for that purpose, contained in the answer filed January 13, 1894—after the period of one year in question had elapsed—amounts to nothing; and we discover no other allegation by which the defect is supplied. It is found that the expenditures made by defendant for such repairs occurred between January 9, 1893, and January 9, 1894. Unless the damage thus arising from the failure of the contractor to keep the pipe in repair accrued at least as early as notice to the defendant of the assignment to plaintiff of the demand sued upon, then such damage could not be counterclaimed in this action at all—assuming that the substance of the contract between defendant and the Silver Gate Manufacturing Company is correctly set forth in the findings before us; for it appears that the agreement of the defendant to pay the contract price in thirty-five

days after completion of the contract was in no manner dependent upon the contractor's engagement to keep the pipe in repair for one year after such completion. (See *Wallace* v. *Maples*, 72 Cal. 356.) And, upon notice to defendant of the transfer to plaintiff of the contractor's right to the money due for the work, defendant's right to counterclaim for subsequent repairs was lost as against the assignee; no right of recoupment or setoff for expense of future repairs existed in favor of defendant. (Code Civ. Proc., secs. 368, 438, 440.)

It is not clear whether like effect would follow the assignment made by the original contractor to the Ætna Iron and Steel Company in 1892, and of which notice was had by defendant at least as early as May 2, 1893; for it may be surmised from some parts of the record that there was perhaps a mere novation of the Ætna company for the Silver Gate Manufacturing Company in the contract; and, if so, of course such assignment would not affect the right of setoff. If it becomes material, the nature of that assignment can be determined on another trial.

The judgment and order appealed from are reversed and the cause remanded for a new trial with leave to any of the parties to amend its pleadings, and it is so ordered.

Hearing in Bank denied.