[L. A. No. 4139. Department One.—June 5, 1918.]

## SOUTHERN CALIFORNIA ELECTRIC COMPANY (a Corporation), Appellant, v. C. F. McDONALD et al., Respondents.

Mechanics' Liens—Building Contract—Stop Notice—Service or Before Installment Due—Section 1184, Code of Civil Procedure—Priority of Claims.—One furnishing work and material to a subcontractor on a building contract for the erection of a school building for a school district, who serves a stop notice for the amount of his claim prior to the date on which an installment is due under the original contract, is entitled, under section 1184 of the Code of Civil Procedure, to a preference in payment for the amount of his claim to a claimant furnishing other labor and material to the subcontractor which serves its stop notice after the maturity of the installment.

Id.—Remedies—Enforcement of Lien.—The remedy by stop notice under section 1184 of the Code of Civil Procedure is entirely distinct from, and disconnected with, the remedy by perfecting and enforcing a lien upon property under section 1183 of said Code. Decisions relating to the apportionment of proceeds in foreclosure suits do not apply to the application of funds intercepted by a stop notice.

Id.—Assignment of Installment to Become Due—Priority Under Stop Notice.—An assignment by a subcontractor under a contract for the erection of a school building for a school district of his claim for work and labor, made prior to the due date of an installment payable to the original contractor, does not prevent another claimant, under section 1184 of the Code of Civil Procedure, from intercepting the money by a stop notice given prior to ma-

turity thereof, and the right of such claimant is superior to that of the assignee.

ID.—FURNISHING LABOR AND MATERIAL TO SUBCONTRACTOR—LIMIT OF LIABILITY OF ORIGINAL CONTRACTOR.—The claims of persons furnishing labor and material to a subcontractor are limited, as far as the original contractor is concerned, to the amount owing by the latter to the subcontractor on his subcontract.

ID.—BASIS OF LIABILITY OF ORIGINAL CONTRACTOR.—The mere fact that money is due for materials furnished to a subcontractor for a building to be erected gives no claim against the original contractor therefor, but where the latter gives a bond in accordance with the act of March 27, 1897 (Stats. 1897, p. 201, as amended in 1911, Stats. 1911, p. 1422), he is bound to pay for all materials or supplies furnished for the performance of the work, whether furnished at the request of himself or of a subcontractor under him.

ID.—ATTACHING CREDITOR—RIGHTS OF ASSIGNEE OF SUBCONTRACTOR.—The rights of an assignee of a subcontractor under an assignment of all moneys to become due to the subcontractor from the original contractor made at the time of an agreement of the assignee to furnish certain work and labor to the subcontractor for a building to be erected, are paramount to the claim of a subsequent attaching creditor of the subcontractor, and the claim of the attaching creditor does not avail the original contractor as a credit or defense against the claim of the assignee.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge.

The facts are stated in the opinion of the court.

Edward G. Kuster, and Gilbert A. McElroy, for Appellant and Respondent Alex Grant.

Edward T. Bishop, and Carl W. Gibson, for Appellant Southern California Electric Company.

Lewis Sherman Jones, and Frank C. Hoyt, for Respondent Lorbeer Electric Supply Company.

SHAW, J.—The record presents two appeals from parts of the judgment, one by the plaintiff, the other by the defendant Alex Grant.

The main question presented on plaintiff's appeal is whether or not, under the mechanic's lien law as revised in 1911 (Code Civ. Proc., secs. 1183–1203), a claimant for labor or materials

bestowed upon a building, who first serves on the owner a notice to withhold payments, as provided in section 1184, is entitled to preference in the money due from the owner to the contractor, intercepted by such notice, over another claimant who serves a later notice. A brief statement will show the facts upon which this question arises.

Alex Grant was the original contractor for the erection of a school building for the Los Angeles school district. C. F. McDonald was a subcontractor for the electrical work under said contract. The plaintiff furnished to McDonald a part of the work and materials necessary for the performance of the subcontract, and thereby McDonald became indebted to and still owes plaintiff a balance of $570.

The Lorbeer Electrical Supply Company furnished other labor and materials to McDonald on said subcontract, whereby McDonald became indebted to and still owes it a balance of $550. Some extra work was done by McDonald at the request of Grant upon which the Lorbeer Company performed labor and furnished material to McDonald to the amount of $106, for which McDonald is still indebted to it.

The building was completed in accordance with the contract. On October 10, 1913, the plaintiff served upon the school district a notice to withhold money from the contractor for the payment of its claim aforesaid. At that time there was no money due on the contract price from the school district to Grant, but thereafter, on October 14, 1913, the sum of five hundred dollars became due thereon to Grant. Apparently this was the final payment, although the record does not show the fact. Before the trial the district paid this sum into court, and thereupon, by order of the court and with the consent of the parties, the district was exonerated from further liability and the case was dismissed so far as it was concerned. On October 16, 1913, two days after said five hundred dollar payment became due, the Lorbeer Company served upon the school district a notice to withhold payments from Grant to the amount of its claim for $550 aforesaid. Thereafter, on November 7, 1913, it served on the district a second notice covering only the claim for $106 on account of said extras.

The plaintiff's complaint states a cause of action to recover from McDonald the entire amount of its claim against him and to have the money due from the school district to Grant applied on said claim. The Lorbeer Company filed a cross-

complaint setting up its claim against McDonald and Grant and praying that the money due from the school district be applied thereon. The court below divided the five hundred dollars due from the school district proportionally between plaintiff and the Lorbeer Company, giving the plaintiff $254.46 and the Lorbeer Company $245.54. In making this apportionment it excluded the Lorbeer claim on account of the extras aforesaid. These sums were credited to Grant on the respective claims aforesaid and judgment was rendered against him for the balance, that is, for $315.54, in favor of the plaintiff, and for $410.46, including the $106 for extras in favor of the Lorbeer Company.

The plaintiff's argument in support of its appeal is, as indicated above, that the effect of section 1184 is that the one of two or more claimants who first serves a stop notice on the owner is entitled to preference, not only in an installment of the contract price then overdue, but also in all installments then unpaid, whether then due or not, and that the fact that one claimant serves his notice before and the other after the maturity of an installment is immaterial. The question presented is not quite so broad. It will be observed that the installment of five hundred dollars here involved was not due when the plaintiff served his notice, but was past due when the notice of the Lorbeer Company was served. The question whether claimants who serve stop notices prior to the maturity of a given installment are to have preference therein in the order of the time of service, or whether they shall share proportionally, is not involved. It may be that in such a case they should share proportionally in such installment, but we need not and do not decide the question. We think that the fact that the installment became due after plaintiff's notice and before the service of the Lorbeer Company's notice is material and that it is decisive of the rights of the parties.

Section 1184 provides that any person described in section 1183 as entitled to a lien may at any time give the stop notice to the owner, stating that he has performed labor or furnished material, or has agreed to do so, to the contractor and the amount thereof in value, and then proceeds as follows: "Upon such notice being given it shall be lawful for the owner to withhold, and in the case of property which, for reasons of public policy or otherwise, is not subject to the liens in this chapter provided for, the owner or person who contracted

with the contractor, shall withhold from his contractor sufficient money due or that may become due to such contractor to answer such claim. . . . "

So far as public corporations are concerned, this provision is in the same language as it was before the revision of 1911. The owner "shall withhold from his contractor sufficient money due or that may become due to such contractor to answer such claim." In *Diamond Match Co.* v. *Silberstein*, 165 Cal. 282, [131 Pac. 874], this language was construed, and it was held that it made it the duty of the owner upon receiving such notice to withhold a sufficient sum to answer the claim from the first moneys that became due thereafter upon his contract with the contractor, and that if he failed to do so and later notices were served, sufficient to absorb all the subsequent installments of the contract price, the owner could be required by the person who served the first notice to pay the entire amount of his claim up to the amount of the installment which first became due after the service of his notice. Other decisions, in effect, hold that the right of a building contractor to an installment of the contract price is subject to the claims of materialmen and laborers who have given stop notices to the owner prior to the maturity of such installment, and that if the stop notice is given after maturity, the right of the materialman or laborer therein is subject to any previous disposition thereof by the contractor or any previous right acquired against the contractor therein. (*First Nat. Bank* v. *Perris Irr. Dist.*, 107 Cal. 62, [40 Pac. 45]; *Newport Wharf etc. Co.* v. *Drew*, 125 Cal. 585, [58 Pac. 187]; *Miles* v. *Ryan*, 172 Cal. 205, [157 Pac. 5].) These cases decide that if the contractor has assigned an installment, such assignment is good against a subsequent stop notice served after the maturity thereof, and that if a creditor of the contractor has garnisheed such installment, a subsequent stop notice served after maturity is subject to the rights of the attaching creditor. The principle is, that if the laborer or materialman postpones the service of a stop notice until after an installment matures, he can reach only such interest as the contractor then has in that installment, and that he must take it subject to all previously acquired rights of third persons. These propositions are deducible from general principles of law taken in connection with the provisions of section 1184. The obligation of the contract requires the payment of the installment when it

becomes due. The owner is then required to make the payment. If stop notices had been previously given, he is required to pay the amount thereof to the laborer or materialman, and the balance only, to the contractor. The right of such laborer or materialman accrues immediately upon the maturity of the installment. He may immediately begin an action against the owner for so much of the installment as is necessary to pay his claim for labor or materials furnished in the building, and the rights of the parties thereupon become fixed. If a laborer or materialman neglects to serve the stop notice prior to the maturity of an installment, he must be deemed to have waived all right to participate therein as against other claimants who have served notice prior to such maturity, and as against the owner, in the event that he pays such installment promptly at maturity, or before the service of such notice. There is no necessary hardship in this rule. The previous portion of the section allows such claimants to give the stop notice as soon as they have made the agreement to perform labor or furnish materials; they need not wait until the agreement is performed. Promptness on their part, therefore, will secure to them all the benefits which the original contract affords them at the time they enter into the agreement to perform labor or furnish materials for the erection of the building. It necessarily follows that the court below erred in dividing the five hundred dollar payment proportionally between these two claimants, and that plaintiff was entitled to have it appropriated on its own claim.

The Lorbeer Company cites cases where there was a sale of land under a foreclosure of liens, holding that the proceeds must be divided proportionally among lien claimants of equal rank, regardless of the time of filing their respective claims of lien in the recorder's office. The remedy by stop notice under section 1184 is entirely distinct from, and disconnected with, the remedy by perfecting and enforcing a lien upon the property under section 1183. (*Bates* v. *Santa Barbara,* 90 Cal. 547, [27 Pac. 438] ; *First Nat. Bank* v. *Perris Irr. Dist.,* 107 Cal. 62, [40 Pac. 45].) The decisions as to such foreclosure sales have, therefore, no application to the present case.

It further appears that at the time of making the agreement between the Lorbeer Company and McDonald for the work and labor upon which its claim of $550 is based, which

was on October 24, 1912, nearly one year before the five hundred dollars became due from the school district to Grant, McDonald assigned to said Lorbeer Company all his right, title, and interest in all moneys to become due from Grant to him on his subcontract, and ordered Grant to pay the same to said assignee. Grant at that time accepted this order in these words:

"I will honor the above order when money is due.

"Alex Grant."

The Lorbeer Company claims priority in the fund by virtue of this assignment. This claim is untenable. As we have said, an assignment of an installment of the contract price made by the contractor to a third person does not prevent a claimant under section 1184 from intercepting the money by a stop notice given prior to the maturity thereof, and the right of such claimant is superior to that of the assignee. (*First Nat. Bank* v. *Perris Irr. Dist., supra; Newport Wharf etc. Co.* v. *Drew,* 125 Cal. 585, [58 Pac. 187].) In so far, therefore, as the transaction of October 24, 1912, operated to transfer or assign to the Lorbeer Company any part of the money to become, due from the school district to Grant, it would be inoperative against the notice of the plaintiff, which was given prior to the time that the five hundred dollars became due.

It follows from the foregoing conclusions that the judgments below against Grant are not for the correct amounts. Both claimants contracted with McDonald, and hence their claims against Grant are limited to the amount owing by Grant to McDonald on the subcontract, which was $650. The five hundred dollars applied on plaintiff's claim from the money due to Grant for the district operates as a credit to Grant on the subcontract with McDonald, and leaves only $150 due thereon to McDonald. The recovery of the Lorbeer Company against Grant by virtue of its assignment is, therefore, limited to this $150 and $106 for the extras, making a total of $256.

The application of the five hundred dollars on the claim of the plaintiff, as aforesaid, leaves remaining unpaid $70 of its claim against McDonald. The mere fact that this money is due for materials furnished to McDonald for the building gives the plaintiff no claim against Grant therefor. Its claim against Grant is based on the fact that Grant gave a bond in

accordance with the act of March 27, 1897 (Stats. 1897, p. 201), as amended in 1911 (Stats. 1911, p. 1422).  This act provides that every contractor for the erection of a building by a school district must file with the school board a bond in the sum not less than one-half the contract price, to be executed by the contractor and at least two sureties.  Other acts allow a single surety on such bonds.  The bond must provide that if the contractor fails to pay for any materials or labor furnished for the work, that the sureties will pay the same, not exceeding the amount of the bond.  By the terms of the bond Grant became bound to pay for all materials or supplies furnished for the performance of the work, whether furnished at the request of Grant himself or of a subcontractor under him.  (*French* v. *Powell*, 135 Cal. 636, [68 Pac. 92] ; *Associated Oil Co.* v. *Commary-Peterson Co.*, 32 Cal. App. 582, [163 Pac. 702].)  The plaintiff complied with all the conditions of the act necessary to establish the liability of Grant, and thereupon it began suit against Grant and the National Surety Company upon said bond.  By agreement of the parties, and order of the court, this action was consolidated with the action of the plaintiff to recover the balance due from the school district to Grant, and the two cases were tried together.  Upon these facts the plaintiff is entitled to recover of Grant in that action the $70 still remaining due to it for supplies furnished McDonald.

It appears that on September 6, 1913, one Bechtol sued McDonald in a justices' court and attached Grant as garnishee.  Grant answered the writ, admitting that he then owed McDonald $135.  Judgment was rendered against McDonald in a justices' court and he took an appeal to the superior court, where the cause is still pending.  Grant pleaded these facts in defense.  Bechtol is not a party to this action.  Grant's pleading does not show for what amount Bechtol sued, or that it was for money due on contract.  Even if the matter had been properly pleaded, it would not avail Grant as a credit or defense against the claim of the Lorbeer Company, inasmuch as the claim of the Lorbeer Company under its assignment would be paramount to the claim of a subsequent attaching creditor.  Nor is it good against the plaintiff as a defense to its action on the bond on which it recovers $70, or its action for the five hundred dollars intercepted by its stop

notice, which, also, was superior to the claim of any attaching creditor of McDonald.

These embrace all the points made in support of the two appeals. The parties have stipulated to the facts, and it is apparent that there never was any dispute concerning them. A retrial is, therefore, unnecessary. The court below can adjust the rights of the parties upon the going down of the *remittitur* by entering a new judgment that the five hundred dollars deposited in court be applied on the claim of plaintiff, that plaintiff recover of Grant the sum of $70, and that the Lorbeer Company recover of Grant the sum of $256, together with costs and interest in each case. It is to be observed, further, that McDonald does not appeal, and so far as he is concerned the judgments against him have become final. The new judgment will affect only the respective rights of the plaintiff, the Lorbeer Company and Grant.

It is ordered that the judgment be reversed and that the court below proceed to enter judgment in accordance with this opinion.

Sloss, J., and Richards, J., *pro tem.*, concurred.