SUBURBAN ELECTRIC LIGHT CO. v. TOWN OF HEMPSTEAD.

(Supreme Court, Appellate Division, Second Department.   March 7, 1899.)

1. TOWNS—CONTRACT TO LIGHT HIGHWAYS—CONSIDERATION.
   Under Laws 1892, c. 255, as amended by Laws 1896, c. 309, authorizing a town to contract for the lighting of its highways and public places on petition of not less than 25 taxable inhabitants, the town has no authority to let a contract for lighting on a petition by the requisite number of taxable inhabitants, from which a sufficient number of signers withdrew their names so as to leave less than 25 before the execution of the contract or the passage of a resolution by the town board awarding it.

2. SAME—ASSIGNMENT OF CONTRACT—VALIDITY.
   Under Laws 1897, c. 444, requiring municipal contracts to contain a provision prohibiting their assignment without the written consent of the municipality, and authorizing it to revoke a contract assigned without its written consent, and relieving it from all liability to the assignee thereunder, no recovery can be had on a contract with a town for lighting its highways which the contractor assigned to another.

3. SAME—PRIVITY BETWEEN ASSIGNOR AND ASSIGNEE.
   An assignment of such contract to a corporation avoids the contract, though the assignor was the president and general manager of the corporation, and testified that he was "practically the company," since the corporation is a different entity.

4. SAME—ESTOPPEL.
   A town is relieved from liability on a contract which was so assigned, even though it did not annul it until after receiving the benefits thereof, since all persons dealing with a town are chargeable with notice of the extent of its powers.

5. SAME—STREET-LIGHTING CONTRACTS—VALIDITY.

    Laws 1892, c. 255, as amended by Laws 1896, c. 309, authorizing a town to establish lighting districts outside the limits of incorporated villages within its boundaries, and to contract for lighting the same, a contract for lighting a district made up partly of the territory of an incorporated village is void.

Appeal from special term.

Action by the Suburban Electric Light Company against the town of Hempstead. There was a judgment for defendant, and plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Hugo Hirsh, for appellant.

George Wallace, for respondent.

GOODRICH, P. J. The action was brought to recover a sum alleged to be due the plaintiff for electric lighting furnished by it to the defendant during January and February, 1898, under a written contract dated November 6, 1897, made between John Williamson and the town board of Hempstead, and afterwards assigned by Williamson to the plaintiff. The answer set up that the contract was not legal and binding, because it was not entered into in compliance with the provisions of chapter 309 of the Laws of 1896, amending chapter 255 of the Laws of 1892, which latter was entitled "An act to authorize the several towns of this state to establish lamp or lighting districts outside the limits of any incorporated village or villages therein, and to provide for the lighting of the public buildings, streets, avenues, highways and public places in said districts." There was a further defense that there was no lighting district legally formed, and also that there was included in the alleged lighting district part of the territory within the limits of the incorporated villages of Lawrence and Far Rockaway, and that, although the original petition was signed by 43 taxable inhabitants of the district, 28 of them withdrew their signatures by filing a written petition to that effect before the signing of the contract, and that the proceedings of the town board in making the contract were fraudulent and collusive, and that the contract was revoked and annulled by the town board on May 31, 1898. The action was tried, by consent, before one of the justices, without a jury, at special term, when the complaint was dismissed upon the merits, and from the judgment entered thereon the plaintiff appeals.

The sections of the act upon which our decision must rest are as follows:

"Section 1. It shall be lawful for the town board of any town in this state to contract for the lighting of the streets, avenues, highways, public places and public buildings therein, outside of the corporate limits of any incorporated village in said town, upon such terms and for such time or period, not exceeding ten years, as the town board may deem proper or expedient, and for the payment of the expenses thereof may establish one or more lamps or lighting districts therein. * * *

"Sec. 2. No such contract shall be made unless a petition for such lighting, signed by not less than twenty-five of the taxable inhabitants of said town, shall be filed with the town clerk of said town. * * *

"Sec. 3. The town board ✱ ✱ ✱ shall cause notice of the same to be published for one week in one or more of the newspapers published in such town or towns, ✱ ✱ ✱ and the time and place when the same will be acted upon by said town board. ✱ ✱ ✱"

In August, 1897, a petition, signed by 43 taxable inhabitants, was presented to the town board, asking the latter to establish a lighting district, as shown on a map annexed to the petition, and to make a contract for lighting in such district. There was no evidence showing an actual filing of this petition with the town clerk, but, if it were necessary for us to decide this question, we might assume that, as the town clerk was a member of the town board which acted upon the petition, the petition was filed with the town clerk. The town board passed a resolution which, by clerical omission or otherwise, failed to recite the filing of the petition, but directed the publication of an advertisement of the time and place of hearing on the petition, and containing a description of the limits of the lighting district, and calling for bids to be submitted at the time named. The advertisement was duly published.

On November 4th, before the contract was awarded or executed, 28 of the persons whose names were annexed to the original petition filed a new petition, in which they withdrew their names from the original. This withdrawal left only 18 names of those on the original petition. Up to the time of this withdrawal, there had been neither any resolution of the town board awarding the contract nor any contract executed, so that Williamson had acquired no vested right at the time the 28 names were withdrawn from the original petition. We think the petitioners might lawfully withdraw their names, and that the board had no power to award or execute the contract, as the statute permitted it to act only upon a petition signed by 25 taxable inhabitants.

The meeting for opening bids was adjourned from time to time, until November 6th, when the bid of Williamson was accepted, and the contract in question executed between the town board and Williamson. In May, 1898, but subsequently to the commencement of this action, the board passed a resolution revoking and annulling the contract, specifying as the reason that Williamson had assigned the contract to the plaintiff without the consent of the board. Meanwhile, however, the business of erecting the plant and preparing to light the district had commenced, and on January 1st the lighting began.

One of the principal contentions of the defendant is that both the contract and the assignment of it are invalid, under "An act to prohibit the assignment and subletting of public contracts" (chapter 444, Laws 1897). Section 1 reads:

"A clause shall be inserted in all specifications or contracts hereafter made or awarded by the state, or by any county, or any municipal corporation, or any public department or official thereof, prohibiting any contractor, to whom any contract shall be let, granted or awarded, as required by law, from assigning, transferring, conveying, subletting or otherwise disposing of the same, or of his right, title or interest therein, or his power to execute such contract to any other person, company or corporation, without the previous consent in writing of the department or official awarding the same."

Section 2 provides that if any such contractor shall, without such assent of the corporation, "assign, transfer, convey, sublet or otherwise dispose of the same, or his right, title or interest therein, or his power to execute such contract, to any other person, company or other corporation," the municipal corporation "shall revoke and annul such contract," and be relieved thereby from all liability and obligation thereunder to the assignee.

As the complaint alleges that Williamson assigned the contract to the plaintiff corporation, we are not called upon to decide anything further in this regard, except that, the assignment being without the consent of the town board, the defendant is "relieved and discharged from any and all liability and obligations growing out of said contract" to the plaintiff. Nor is this conclusion affected by the testimony of Williamson that he is "practically the company." He is not the company, though he is the president and manager thereof. It is a different entity, and, as the statute prohibits such an assignment, the plaintiff has no legal right to maintain this action.

It is well settled that a person dealing with a municipal corporation is bound by its statutory authority. In Smith v. City of Newburgh, 77 N. Y. 130, 136, it was held that "the statute must be strictly followed, and a person who deals with a municipal body is obliged to see that its charter has been fully complied with. When this is not done, no subsequent act can make the contract effective." In answer to this, the plaintiff contends that, as the town had the benefit of the plaintiff's property, it is liable, under the principle laid down in Nelson v. Mayor, etc., 63 N. Y. 535. This case, however, was criticized in the subsequent case of McDonald v. Same, 68 N. Y. 23, where the court held the city not liable simply on the ground that it had the goods, and was therefore bound to deal justly and pay for them. The court also said (page 28):

"Here there is an express legislative inhibition upon the city that it may not incur liability unless by writing and by record. How can it be said that a municipality is liable upon an implied promise, when the very statute which continues its corporate life, and gives it its powers, and prescribes the mode of the exercise of them, says that it shall not, and hence cannot, become liable, save by express promise? Can a promise be implied which the statute of frauds says must be in writing to be valid?"

So, in Van Dolsen v. Board, 29 App. Div. 501, 507, 51 N. Y. Supp. 720, it was held that:

"All parties dealing with boards of public officers are chargeable with notice of the limitation of their powers, and a contract made by a public officer in excess of the powers conferred upon him imposes no liability upon a public or municipal corporation, even though the benefits of the contract have been received and applied for the benefit of the public. Walton v. City of New York, 26 App. Div. 76, 49 N. Y. Supp. 615."

The plaintiff in the present case is bound by the act of 1897, already cited, and its claims and rights are to be decided thereby. The complaint itself shows a clear violation of that law, and was demurrable. This excludes the plaintiff from any right of recovery which it might possibly have maintained, under the suggestion of the court in Nelson v. Mayor, etc., supra. Its only claim is made under a

contract originally void, and even that attempted to be illegally assigned, in contravention of the statute.

There is a still further objection to the plaintiff's recovery, in that the lighting district named in the resolution embraces parts of the territory of an incorporated village, over which the defendant had no control. It makes no difference that the territory thus embraced is of small extent. The statute expressly forbids the inclusion of any part of an incorporated village. The town board can only contract for lighting "outside of the corporate limits of any incorporated village," and any attempt to do so is prohibited by the statute. To permit a recovery because the portion of the village territory embraced in the lighting district is small would involve confusion in assessment and provoke litigation from taxpayers.

Upon these grounds we must affirm the judgment, with costs. All concur; BARTLETT and HATCH, JJ., on the first ground.