[L. A. No. 554.   Department One—Aug: 16, 1899.]

## THE NEWPORT WHARF AND LUMBER COMPANY, Appellant, v. H. L. DREW et al., Respondents.

MECHANICS' LIENS—NOTICE BY MATERIALMEN—GARNISHMENT—STOP-
PAGE OF FUTURE PAYMENTS.—A notice given by materialmen
to the trustees of an asylum demanding payment of their claims
out of the balance remaining due to a contractor who had
agreed to furnish materials and perform labor upon a ward
building for the asylum, is equivalent to a garnishment of the
moneys then payable to the contractor, the effect of which is
to be determined by the rights of the contractor as to payments
already matured, and also operates as a notice that the pay-
ment of any moneys thereafter becoming payable under the
terms of the contract, otherwise than·to the claimants, would
be at the peril of the trustees.

ID.—EFFECT OF NOTICE UPON MATURED INSTALMENTS—ASSIGNMENT
BY CONTRACTOR.—If the contractor is still entitled to demand
payment of instalments already matured at the time of the
notice, payment to him is intercepted by the notice; but, if he
has already assigned them to a third party, the notice will be
inoperative to prevent their payment to such party.

ID.—AGREEMENT FOR SATISFACTION OF TRUSTEES—ESTIMATES BY
SUPERINTENDENT—APPROVAL AND DIRECTION FOR PAYMENT—AS-
SIGNABILITY OF ESTIMATES.—Under a contract providing that
the work should be done to the satisfaction of the trustees of
the asylum, and that ninety per cent of the value of the work
and materials should be paid in monthly instalments as the
work progresses, upon estimates made by the superintendent
of construction, the approval of an estimate by the trustees,
and their direction for its payment, without any formal declara-
tion of their satisfaction, vests in the contractor the right to

the immediate payment of the monthly instalment of ninety per cent. Such estimates of value are assignable by the contractor prior to their approval; and the subsequent approval thereof, prior to notice from a materialman, inures to the benefit of the assignee.

ID.—PROVISION FOR CONTROLLER'S WARRANTS.—The maturity and assignability of the monthly instalments, after approval of the estimates of value, and direction for payment, are not affected by a provision in the contract for payment in controller's warrants, nor by the failure to procure such warrants immediately upon the approval of the estimates.

ID.—NOTICE BY MATERIALMAN BEFORE APPROVAL OF ASSIGNED ESTIMATE.—The notice by a materialman of his claim against the contractors given prior to the approval of an assigned estimate, intercepts the payment to the contractors before their right to receive the money has accrued, and any assignment thereof by the contractors prior to maturity of the instalment is ineffective as against the materialman.

ID.—ASSIGNMENT TO BANK—PRESIDENT AS TRUSTEE OF ASYLUM—AUTHENTICATION OF ESTIMATES.—The fact that the assignment of the estimates was made to a bank as security for money borrowed from the bank, and that its president was chairman of the board of trustees of the asylum for which the work was done, does not disqualify such president from acting as a member of the board of trustees in approving the estimates of the superintendent of construction, or from authenticating the action of the board as its chairman, though the effect of such action is to render the amount immediately payable to the bank.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. John L. Campbell, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, and James G. Scarborough, for Appellant.

Otis & Gregg, for Respondents.

HARRISON, J.—Dewar & Chisholm, as contractors, entered into a contract with the board of trustees of the Southern California State Asylum for the insane and inebriates, January 5, 1894, by which they agreed to perform the labor and furnish the material required for the carpenters' and plasterers' work of a ward building for the asylum, at an agreed price to be paid as follows, viz., ninety per cent of the value of the materials used

and labor performed "as the work progresses," and payment in full "upon the acceptance of said work by the board of trustees." For the purpose of determining the amount of the several payments, the contract provided that the superintendent of construction should for each payment make a certificate "showing a full and accurate estimate of the labor performed and materials furnished under the contract, with the amount due thereon," which estimate should, in all cases, give the amount of the preceding estimates, if any, and the amount of labor performed and materials furnished since the last estimate; and it was further provided that these estimates should not be required oftener than once a month, and that the trustees of the asylum should retain from each and all payments a sum amounting to ten per cent of the amount thereof, "until the completion and acceptance of said work" by them.    Under these provisions ten estimates, or certificates, were made by the superintendent of construction, of which the first seven were paid to the contractors.    The controversy herein relates only to the last three estimates and the ten per cent of the contract price retained by the trustees.

The customary mode of making these estimates was as follows: A certificate showing the labor performed and materials furnished by the contractors subsequent to the preceding one, together with their value, was prepared in the form of a bill of account in behalf of the contractors, with the approval of the superintendent of construction indorsed thereon, and was presented to the board of trustees for its allowance and order for payment.    Upon the allowance and order for payment of this bill a warrant was drawn by the state controller in favor of the trustees for the payment of ninety per cent of its amount and delivered to them.    In this manner the eighth estimate, amounting to $2,814.75, was presented to the board of trustees, and by that body allowed and ordered paid January 14, 1895, and a warrant for ninety per cent thereof, viz., $2,533.28, was drawn by the controller in favor of the trustees March 2d, and thereafter paid to the trustees.    The ninth estimate, for $649.75, was presented and allowed February 11th, and a warrant for ninety per cent thereof, viz., $584.78 was drawn March 29th and paid to the trustees.    March 18th the tenth and final estimate, for

$725.90, was presented and allowed, and the work of the contract having at that time been completed, a warrant for $2,579.33, the amount of this estimate, together with the amount of the previous deductions of ten per cent, was drawn in favor of the trustees and paid May 17th.

The plaintiff herein furnished materials to Dewar & Chisholm at various times prior to February 7, 1895, which were used in the performance of their contract, and on March 1, 1895, gave to the board of trustees a notice in writing of that fact, and that there was remaining unpaid thereof the sum of $6,654.10, and demanded payment to it of the balance then remaining unpaid to Dewar & Chisholm. Dewar & Chisholm borrowed money at different times during the performance of their contract from the Farmers' Exchange Bank, one of the defendants herein, and in some instances executed their promissory notes therefor, and assigned to the bank the estimates of the superintendent of construction as security for their payment. The superintendent of construction was accustomed to give to them informal certificates, or estimates, before presenting them to the board of trustees for allowance, and upon their receipt Dewar & Chisholm assigned them to the bank, as such security, with directions that the amount of the estimate be paid to the bank. Such informal certificate for the eighth estimate was made December 28, 1894, and was assigned to the bank on the next day as security for a note of two thousand dollars, with an order for its payment to the bank. The ninth estimate is dated February 11, 1895, and was in like manner indorsed over to the bank February 13th. After the approval of these estimates by the board of trustees and an order for their payment, the cashier gave notice to the trustees that they had been assigned to the bank, and requested that the amount thereof should be paid to it. The tenth informal certificate is dated February 15th, and states that it will be presented to the trustees for their approval March 11th. It was indorsed over to the bank on the day of its date, and on the same day the cashier gave notice thereof to the trustees, stating therein that the estimate would be presented to the board at its next meeting.

At the meeting of the trustees March 18th, at which the tenth estimate was approved, the above notice given by the

plaintiff to the trustees was considered by them, and they determined that inasmuch as the above three estimates had been assigned for value to the bank, prior to the receipt of the notice, the amount thereof should be paid to the bank and not to the plaintiff.   Thereupon the plaintiff brought the present action for the purpose of determining the respective rights of it and the bank to the same.   The superior court held that the bank was entitled to the unpaid amount of its advances upon the estimates to Dewar & Chisholm, and that the plaintiff was entitled to the surplus thereof, and rendered judgment accordingly.   From this judgment and the order denying a new trial the plaintiff has appealed.

1. The effect of the notice of March 1st, given by the plaintiff to the trustees, was to intercept in their hands any money which Dewar & Chisholm were then entitled to receive, or which afterward might be payable to them in accordance with the terms of their contract.   The notice was equivalent to a garnishment of the moneys then payable to them, and also operated as a notice to the trustees of the plaintiff's claim against Dewar & Chisholm, and that the payment to the latter of any moneys that might thereafter become payable to them under the terms of the contract would be at the peril of the trustees. The contractor cannot prevent the effect of this notice as to any payments that may mature after it is given, but its effect upon payments that have matured before it is given, but which have not been made, is to be determined by the rights of the contractor in reference to them.   If he is still entitled to demand their payment from the owner, such payment is intercepted by the notice, but if he has already assigned them to a third party the notice will be inoperative to prevent their payment to such party.   (Code Civ. Proc., sec. 1184; *Bates v. Santa Barbara County,* 90 Cal. 543; *First Nat. Bank v. Perris Irr. District,* 107 Cal. 55.)

The provision in the contract for the payment of ninety per cent of the value of materials used and labor performed "as the work progresses," with the condition that, before any payment should be made, the superintendent of construction should, not oftener than once a month, furnish an "estimate" of such labor and materials, "with the amount due thereon," rendered

such instalment of the contract price due and payable immediately upon the acceptance of the work by the trustees. The contract provided that the work should be done to the satisfaction of the board of trustees, and the contractors were not entitled to demand payment of the amount of the estimate until after such approval and acceptance. Their approval of the estimate and direction for its payment implied their satisfaction with the work without any formal declaration to that effect. Upon such approval and direction the obligation of the state which had been created in favor of the contractors by the trustees became complete, and the right of the contractors to immediate payment became vested in them and was subject to their disposition. The provision in the contract for payment of the contract price in controller's warrants on the state treasurer did not affect this power of disposition, or right to immediate payment, or suspend its exercise until such warrants should be obtained. The failure or neglect to obtain a warrant immediately upon the approval of the estimates would have no greater effect than a similar failure on the part of the contractor, in the case of an ordinary building contract, to obtain a check from the owner immediately upon receiving the architect's certicate that the instalment is payable.

As seen above, the eighth and ninth estimates were approved and ordered paid before the plaintiff gave the notice of March 1st, but prior to the giving of the notice the contractors had assigned these estimates for value to the Farmers' Exchange Bank and were no longer entitled to receive the amount of the warrants drawn therefor. The right of the bank to receive the amounts for which the warrants were drawn was not affected by the fact that the assignment had been made before the estimates were approved by the trustees. The contractors had assigned whatever claim they had by virtue of the "estimates," and the subsequent approval by the trustees, prior to receiving the notice from the plaintiff, inured to the benefit of their assignee. At the time the tenth estimate was presented to the trustees the plaintiff had given notice of its claim, and had thus intercepted the payment to the contractors before their right to receive the money had accrued. Any assignment thereof by the contractors prior to the time when this estimate was payable was ineffective as against the plaintiff.

By the terms of the contract "payment in full" was not to be made until the "acceptance of said work by the board of trustees"; and the trustees were to retain, "until the completion and acceptance of said work" by them, ten per cent of all payments.   The aggregate of the estimates was $19,260.40, and ten per cent thereof, viz., $1,926.04, was to be so retained until the acceptance of the work.   This amount is included in the warrant covering the amount of the tenth estimate, and was not ordered to be paid until March 18th.   There is nothing in the record showing that the work was accepted by the trustees prior to that date, and, as at that time the plaintiff had given its notice of claim, it must be held that this notice had the effect to cut off the right of the trustees to make the payment to the contractors, or to their order, and gave to the plaintiff the right to receive it.

2. Each of the above estimates made by the superintendent of construction was presented to the board of trustees and approved by it, and is indorsed "Examined, allowed, and ordered paid by the board of trustees this —— day of ——, 1895," with the date of such approval, and is authenticated by the signature, "H. L. Drew, chairman."   It is contended by the appellant that as Drew was at the times of such approval the president of the Farmers' Exchange Bank, he was disqualified from acting as one of the trustees of the asylum in the approval of the estimates.

The board of trustees of the asylum consists of five members, and it does not appear from the record that Mr. Drew participated in the action of the board when it approved these estimates and directed their payment.   The authentication by him of the action of the board was subsequent thereto and was only a ministerial act.

Drew's position, however, as one of the trustees, was not such as to disqualify him from acting upon the estimates of the superintendent of construction.   Under the provisions of section 7 of the "Act to regulate contracts on behalf of the state in relation to erections and buildings" (Stats. 1876, p. 430) it is made the duty of the "officer to whom is confided the duty of superintending the erection of any state asylum, building, or improvement," at the times named in the contract for constructing such

building, to make an estimate of the amount of each payment to be made, and the warrant of the controller is to be drawn upon the treasurer for the amount of such estimate. Under the statute authorizing the construction of this asylum (Stats. 1889, p. 120) the trustees therein created are empowered to appoint a competent person to superintend its construction. The contract between the parties and Dewar & Chisholm was in conformity with the above provisions of the act of 1876, and was approved by the attorney general as provided in that act, and by its terms these estimates were to be made by the superintendent of construction. The trustees appointed T. H. Goff as such superintendent of construction, and he was, therefore, the officer to whom, in the terms of the act of 1876, was confided the duty of superintending the erection of the asylum, and whose duty it was under said act, as well as under the contract with Dewar & Chisholm, to make the aforesaid estimates. By the terms of the contract the work was to be done to the satisfaction of the board of trustees, as well as that of the superintendent of construction, and the approval by the trustees of the several estimates when presented operated as an acceptance of the work done on the contract prior to the dates of such approval. Their function, however, was merely to declare their approval or disapproval of the work and to determine its conformity with the terms of the contract, while the function of fixing the amount of the payment, both under the statute and by the terms of the contract, devolved upon Goff. Upon their acceptance of the work the contractor became immediately entitled to the payment of the amount of the estimate. The state alone was interested in securing a satisfactory compliance with the contract, and under section 10 of the act of 1876 could at any time question the act of Drew in fraudulently accepting the same; but the plaintiff herein is not in a position to object to such acceptance, even if it had been open to objection. It is not suggested that Dewar & Chisholm failed in any respect to complete their contract according to its terms, nor is it claimed that Drew was in any respect negligent, or unmindful of his obligations as trustee, the claim of the plaintiff being that by reason of his dual relation he was disqualified from accepting the work, upon the ground that by such acceptance he enabled the bank in

which he was interested to receive the amount of the estimate. Such advantage to the bank did not, however, flow directly to it from the acceptance of the work, but was merely an incidental consequence thereof. The acceptance of the work was not invalidated by reason of Drew's relation to the bank, even though its effect was to cause the amount of the estimate to become immediately payable.

The judgment and order denying a new trial are reversed.

Garoutte, J., and Van Dyke, J., concurred.