WELLES et al. v. PORTUGUESE-AMERICAN BANK OF SAN FRANCISCO.

(Circuit Court of Appeals, Ninth Circuit.   March 9, 1914.)

No. 2273.

1. MECHANICS' LIENS (§ .113*)—SUBCONTRACTORS' RIGHTS—NOTICE TO OWNER
—NATURE OF REMEDY.

Code Civ. Proc. Cal. § 1184, provides that a subcontractor may give to the reputed owner a written notice that he has performed labor or furnished material, or both, to the contractor, and, such notice being given, it shall be the duty of the person who contracted with the contractor to withhold sufficient money to answer the claim and any lien that may be filed thereafter, etc.   Held, that the remedy so provided was disconnected from and additional to the subcontractor's right to a lien on the structure; the notice operating as an assignment pro tanto of that which is due or to become due the contractors, which amount is sequestered as though under garnishment.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 148; Dec. Dig. § 113.*]

2. MECHANICS' LIENS (§ 114*)—SUBCONTRACTORS—NOTICE TO OWNER—EFFECT.

Notice by a subcontractor to the owner to withhold money due the contractor to pay the claim of the subcontractor, as authorized by Code Civ. Proc. Cal. § 1184, does not affect claims that have previously become due and have been transferred by the contractor for value.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 149; Dec. Dig. § 114.*]

3. MUNICIPAL CORPORATIONS (§ 1001*) — CLAIMS — PRESENTATION — CHARTER
PROVISIONS—APPLICATION.

City Charter of San Francisco, art. 2, c. 1, § 19, provides that all demands payable out of the treasury must be approved by the board of supervisors before they can be approved by the auditor, or paid by the treasurer, and that all demands for more than $200 shall be presented also to the mayor for his approval, and all resolutions directing the payment of money other than salaries or wages amounting to $500 shall be published, etc.   Held, that such provisions had no application to payments due under a contract with the board of public works for the construction of a public improvement.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2173; Dec. Dig. § 1001.*]

4. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—CONTRACTS—
PROGRESS PAYMENTS.

Where a contract for the construction of a sewer for a municipal corporation provided that the contractor should not either legally or equitably assign any of the money payable under the contract or his claim thereto, without the consent of the board of public works, a progress payment under the contract was not assignable without such consent as against the rights of a subcontractor to sequester the same by notice to the city, as authorized by Code Civ. Proc. Cal. § 1184.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

Appeal from the District Court of the United States for the First Division of the Northern District of California; Frank S. Dietrich, Judge.

Suit by Paul I. Welles against the Portuguese-American Bank of San Francisco, the Metropolis Construction Company, the Auditor of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the City and County of San Francisco, and John Daniel, the bankrupt's trustee, to enforce a subcontractor's lien on money due to the construction company by the city as a fourth progress payment on the price of the construction of a sewer. Judgment for the bank, and complainant, Welles, and the construction company's trustee in bankruptcy appeal. Reversed and remanded with directions to enter a decree for complainant Welles.

The controversy herein concerns a fund of $6,830.85, which became payable as the fourth progress payment to the Metropolis Construction Company, for work in constructing a sewer under a contract with the board of public works of the city and county of San Francisco. On or before December 5, 1910, the construction company made a claim for that sum as due under its contract. On December 5th the board of public works by resolution approved the claim. On the same day the construction company presented to the appellee a certified copy of the resolution, together with two other such resolutions of dates prior thereto, approving claims aggregating about $38,000, also a paper addressed to the city auditor, of date December 5, 1910, notifying him that the appellee was authorized and empowered to draw warrants in favor of the construction company for the payments on the contract. The appellee thereupon loaned to the construction company $35,000. The claim for the fourth progress payment was not approved by the board of supervisors or the mayor until January 3 and 4, 1911, nor did that board or the mayor receive notice of the order of the construction company on the auditor or of the rights of the appellee thereunder until December 19, 1910. In the meantime, on December 12th and 16th, the appellant Welles, who was a subcontractor on the sewer work, gave a notice to the auditor, to the board of public works, and to the board of supervisors, to withhold from the construction company the fourth progress payment of $6,830.85 under the provisions of section 1184 of the Code of Civil Procedure. On December 17, 1910, the appellee notified the auditor, the board of public works, and the supervisors that it claimed an assignment from the construction company of the fourth progress payment. On December 19, 1910, a petition in bankruptcy was filed against the construction company, and on January 5, 1911, it was adjudged a bankrupt. On January 26, 1911, the appellee began an action in the superior court of the state of California against the auditor to recover the money in controversy.

On April 18, 1911, Welles began the present suit in equity against the appellee, the bankrupt, the auditor, and the trustee in bankruptcy. Thereupon an order was made requiring the defendants in this suit to show cause why the auditor should not pay the money to the trustee to abide the result of the suit, and to show cause why the appellee should not be enjoined from prosecuting its action. The auditor and the appellee made return to the order. On July 11, 1911, the cause was referred to a referee to hear testimony and find facts on the order to show cause. On October 14, 1911, the referee made his report finding the facts, and no objections having been taken thereto the report was confirmed on December 12, 1911, and an order was made enjoining the appellee from prosecuting its action in the state court, and directing the auditor to pay the $6,830.85 to the trustee in bankruptcy to abide the result of the suit. In the meantime, on October 6, 1911, the bankrupt filed its answer to the bill of complaint. On December 26, 1911, the cause was referred to the referee on final hearing to hear testimony and proof and find facts upon the issues arising on the pleadings. On March 8, 1912, the referee filed a brief report to the effect that his former findings as confirmed were res adjudicata. To that report the appellee filed exceptions. On April 15, 1912, the exceptions were sustained, and the cause was again referred to the referee to ascertain and report the facts and his conclusions of law on the testimony taken and on file. On July 16th he reported his findings of fact, finding that the fourth progress payment was assigned to the appellee and that the right of the appellee to receive the same was not affected by the notices to withhold made by the appellant Welles. This report was subsequently confirmed. From the decree thereon rendered the present appeal is taken.

A. F. Morrison, P. F. Dunne, W. I. Brobeck, Gavin McNab, B. M. Aikins, and Milton J. Green, all of San Francisco, Cal., for appellant Daniel.

C. A. S. Frost, of San Francisco, Cal., for appellant Welles.

George A. Knight, Charles J. Heggerty, James B. Feehan, Joseph W. Beretta, all of San Francisco, Cal., for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellant Welles contends that he is entitled to priority by virtue of his notice to withhold, which was given under section 1184 of the Code of Civil Procedure. That section provides, in substance, that a subcontractor may at any time give to the reputed owner a written notice that he has performed labor or furnished material, or both, to the contractor, which notice shall contain, among other things, the amount and value of that which has been furnished by the subcontractor, and that upon such notice being given it shall be the duty of the person who contracted with the ·contractor to withhold from the contractor "sufficient money due or that may become due to such contractor or other person to answer such claim and any lien that may be filed thereafter for record under this chapter, including counsel fees not exceeding $100 in each case, besides reasonable costs provided for in this chapter." The remedy thus provided for is disconnected from and additional to the remedy by lien upon the structure, and it has been held that it should be regarded with favor by the courts (Bates v. Santa Barbara County, 90 Cal. 543, 27 Pac. 438), that the notice operates as an assignment pro tanto of that which is due or to become due to the originl contractor, and that that amount is sequestered as though under garnishment (Hampton v. Christensen, 148 Cal. 729, 84 Pac. 200).

[2] But the notice to withhold does not affect claims that have previously become due and have been transferred for value by the contractor. Newport Wharf & Lumber Co. v. Drew, 125 Cal. 585, 58 Pac. 187. In the case last cited the court said:

"The contractor cannot prevent the effect of this notice as to any payments that may mature after it is given, but its effect upon payments that have matured before it is given, but which have not been made, is to be determined by the rights of the contractor in reference to them. If he is still entitled to demand their payment from the owner, such payment is intercepted by the notice; but, if he has already assigned them to a third party, the notice will be inoperative to prevent their payment to such party."

And referring to the contract under consideration in that case, the court said:

"The contract provided that the work should be done to the satisfaction of the board of trustees, and the contractors were not entitled to demand payment of the amount of the estimate until after such approval and acceptance. Their approval of the estimate and direction for its payment implied their satisfaction with the work without any formal declaration to that effect. Upon such approval and direction the obligation of the state which had been created in favor of the contractors by the trustees became complete, and the

right of the contractors to immediate payment became vested in them and was subject to their disposition. The provision in the contract for payment of the contract price in Comptroller's warrants on the State Treasurer did not affect this power of disposition, or right to immediate payment, or suspend its exercise until such warrants should be obtained."

[3] It is urged that the fourth progress payment in the present case was not due, and that the demand of the construction company therefor did not mature by virtue of the resolution of the board of public works, that there still remained to be obtained the approval of the board of supervisors and of the mayor. Reference is made to the city charter then in force (article 2, c. 1, § 19), which provides that all demands payable out of the treasury must be first approved by the board of supervisors before they can be approved by the auditor or paid by the treasurer, and that all demands for more than $200 shall be presented also to the mayor for his approval, and that all resolutions directing the payment of money other than salaries or wages when the amount exceeds $500 shall be published for five successive days, Sundays and legal holidays excepted, in the official newspaper. The contract in this case, however, was not made directly with the city. It was made between the construction company and the board of public works under authority granted to that board by the charter. That board was given therefore the power to decide that the conditions of the contract had been fulfilled and to approve claims for work done thereunder and to direct the payment of the same. The provision of that charter in regard to approval by the supervisors and mayor was a general precautionary measure prescribed as to all payments of money by the city, and it was intended only for the greater protection of the city. It had not the effect to vest in that board or the mayor authority to determine whether contracts had been complied with or whether payments had become due thereunder in cases where such power had been expressly delegated to the board of public works. The provision for the approval of the board of supervisors and the mayor, as related to the present case, stands upon the same plane as the contractual provision which was under review in Newport Wharf & Lumber Co. v. Drew, providing for the payment of the contract price in comptroller's warrants to be drawn on the state treasurer.

[4] If therefore the appellee was on December 5, 1910, the assignee in good faith for value, of the fourth progress payment, its equities are superior to those of the appellant Welles. But it is urged that it was not such an assignee, that the contract in express terms provided that without the consent of the board of public works the contractor "shall not either legally or equitably assign any of the moneys payable under this contract or his claim thereto," and that the board neither knew nor assented to the assignment. The question arises whether this provision of the contract makes void the assignment which was made to the appellee.

"A contract to pay money may doubtless be assigned by the person to whom the money is payable, if there is nothing in the terms of the contract which manifests the intention of the parties to it that it shall not be assignable." Delaware County v. Diebold Safe Co., 133 U. S. 473, 488, 10 Sup. Ct. 399, 404 (33 L. Ed. 674).

In Devlin v. Mayor, etc., of New York, 63 N. Y. 8, Judge Allen said:

"Parties may, in terms, prohibit the assignment of any contract and declare that neither personal representatives nor assignees shall succeed to any rights in virtue of it, or be bound by its obligations."

The appellee cites cases to the proposition that a provision whether contained in the instrument itself, or expressed in a statute, forbidding the assignment of the contract, or of any interest therein, does not stand in the way of a transfer of the moneys which have become due or are to become due the contractor thereunder. Mueller v. Northwestern University, 195 Ill. 236, 63 N. E. 110, 88 Am. St. Rep. 194; Lowry v. City of Duluth, 94 Minn. 95, 101 N. W. 1059; Norton v. Whitehead, 84 Cal. 263, 24 Pac. 154, 18 Am. St. Rep. 172. Those decisions are based upon the proposition that the thing assigned is not the precise thing which is forbidden to be assigned. They are not directly applicable to the contract under consideration here, for the reason that here the prohibition is not against the assignment of the contract, but against the assignment of the moneys payable thereunder without the consent of the board of public works. Cases are cited also which hold that, where the contract prohibits assignment, an assignment for security is not within the prohibition. Fortunato v. Patten, 147 N. Y. 277, 41 N. E. 572; Crouse v. Mitchell, 130 Mich. 347, 90 N. W. 32, 97 Am. St. Rep. 479; Butler v. Rockwell, 14 Colo. 125, 23 Pac. 462. Those cases are not in point for the reason that here the prohibition is against both the legal and the equitable assignment of the moneys.

It is contended further that such a provision against assignment is intended for the benefit of the city alone, and that no one else can complain of its breach. Fortunato v. Patten, 147 N. Y. 277, 41 N. E. 572, is cited as a case in which it was so held. But in Burck v. Taylor, 152 U. S. 635, 14 Sup. Ct. 696, 38 L. Ed. 578, where a contract with a state for the erection of a public building was made unassignable by express stipulation, it was held that an attempted transfer of an interest in the contract without the state's consent was ineffectual further than to give a right of action against the contractor for a measure of the profits. It is argued, however, that that case is to be distinguished from the case at bar in that there was an absolute covenant on the part of the contractor in that case that the contract should not be assigned in whole or in part without the consent of the state. But the contract in the present case having been assented to in all its terms by the contractor is as binding upon him as if his obligations had been affirmatively expressed in a covenant to abide by the same. In Burck v. Taylor, the court said of the provision against assignment:

"It may be conceded that, primarily, it was a provision intended, although not expressed, for the benefit of the state, and to protect it from interference by other parties in the performance of the contract, to secure the constant and sole service of a contractor with whom the state was willing to deal, and to relieve itself from the annoyance of claims springing up during or after the completion of the contract in favor of parties of whose interest in the contract it had no previous knowledge, and to the acquisition of whose interests it had not consented. Concede all this, and yet it remains true that

it was a stipulation which was one of the terms of the contract and binding upon the contractor, and equally binding upon all who dealt with him."

We see no reason why this provision of the contract under consideration shall not be given the meaning and effect which its words import. It plainly stipulates against the assignment of the payments. There must have been substantial grounds for embodying such a provision in the contract. We may assume that one of the purposes, and probably the principal purpose thereof, was to protect subcontractors in their equitable rights to the unpaid funds in the hands of the city in case notice should be given under section 1184, and to afford such subcontractors better opportunity to secure payment for that which they might contribute to the work which was under construction, as well as on behalf of the city to avoid the possible complications and litigation that might attend the transfer to another of the payments accruing under the contract. In a similar case the Supreme Court of Nebraska said:

"But it is needless for us to speculate on the motives for the city's action. It is enough for us to know—whatever its reasons may have been—that it has, in plain language, stipulated against an assignment of the contract. * * * To hold that it covers some, but not all, of the rights and obligations arising out of the contract, would be, it seems to us, an inexcusable perversion of its terms." City of Omaha v. Standard Oil Co., 55 Neb. 337, 75 N. W. 859.

And again in Murphy v. City of Plattsmouth, 78 Neb. 163, 110 N. W. 749, that court held that, where a contract with a city for a public improvement expressly provides that it shall not be assigned, such provision is enforceable, and an assignee thereof cannot recover the money due thereunder, or any part thereof. In 20 Am. & Eng. Enc. of Law, 1156, it is said:

"It is frequently provided by charter or statute, or the contract itself, that a contract with a municipality shall not be assigned without the consent of the city, and such a provision is valid and operative according to its terms" —citing Deffenbaugh v. Foster, 40 Ind. 382; Suburban Electric Light Co. v. Hempstead, 38 App. Div. 355, 56 N. Y. Supp. 443.

In the first of the cases so cited it was held that, where a contract for street improvement contained a provision that the contract should not be assigned without the consent of the common council, no one besides the contractor can maintain an action thereon in the absence of the common council's consent. The second case is of similar import.

The decree is reversed, and the cause is remanded, with instructions to enter a decree for the appellant Welles.