## Wilson et al., Appellants, *v.* New Castle City et al.

Argued May 27, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. Norman Martin,* of *Martin & Martin,* with him *J. G. Lamoree,* for appellants.—The contract should have been given to the lowest responsible bidder.

Admissions are evidence against the party making them, though the relation to the contents of the written paper are a corporate vote: Miller v. Dilkes, 251 Pa. 44; Wilson v. United States, 221 U. S. 361.

The contract is bad under the statute and as a matter of public policy. The minutes are conclusive against and binding upon the corporation: McGowan v. Lincoln Park & S. Co., 181 Pa. 55; Bevans v. Turnpike Co., 10 Pa. 174.

Taxpayers are members of the municipal corporation. Councilmen are its directors and agents: Milford v. Water Co., 124 Pa. 610; Com. v. Eagan, 234 Pa. 24; Com. v. Harris, 248 Pa. 570.

*Wylie McCaslin,* with him *Robert White,* City Solicitor, for appellees.—The presumption is that council acted from honest motives: Com. v. Mitchell, 82 Pa. 343; Douglass v. Com., 108 Pa. 559; Interstate Vitrified Brick & Paving Co. v. Phila., 164 Pa. 477; Phila. v. Pemberton, 208 Pa. 214; Hibbs v. Arensberg, 276 Pa. 24; Lamb v. Redding, 234 Pa. 481; Day v. School Dist., 283 Pa. 248; Summit Hill School Directors' Removal, 289 Pa. 82; Hiorth v. Chester City, 282 Pa. 387.

The mayor of the city had no interest in the contract.

OPINION BY MR. JUSTICE KEPHART, June 21, 1930:

The City of New Castle advertised for bids for repaving parts of three separate streets. Taxpayers, averring the city had accepted a bid higher than the lowest, brought this bill to restrain the city from executing the contract. The court below dissolved the preliminary injunction.

The only assignment of error is to the decree. We have stated that where the final decree only is assigned, we will not go beyond the findings of fact to ascertain if the decree was justified. The evidence submitted to sustain them will not be inquired into. As a general rule, in an appeal from the dismissal of a bill for, or the refusal or dissolution of, a preliminary injunction, this court will not disturb the status fixed by the court below until final hearing, but because public work is being held up, we will discuss the case generally, as appellant raises the questions.

Woods & Golder Company, one of the appellees, was a contracting concern, indebted to banks in New Castle in the sum of $43,000. Woods & Golder, two of its stockholders, made separate assignments of their stock, one to Norris, as trustee, the other to Hartman, in trust for creditors and finally in trust for the transferers. Hartman and Norris were connected with the banks; the former was a director and president of the Lawrence Savings & Trust Company, one of the cred-

itors of appellee; he was also a director in the construction company, appellee. Other directors in the construction company were Brown and Miner, both connected with the trust company. When the contract was·let, the mayor of New Castle was a director in the Lawrence Savings & Trust Company. Neither the mayor nor the trust company owned any stock in the construction company, a debtor of the trust company.

Was the contract void because of the ·interest the mayor was supposed to have in the contract? This is the first question raised. Article IV, section 9, of the Act of June 27,. 1913, P. L. 568, regulating cities of the third class, provides as follows: "A member [of council] who has *a personal or private interest* [italics ours] in any measure or bill proposed or pending before council, shall disclose the fact to council, and shall not vote thereon, nor take any part in the discussion of the same. If such interested person shall vote without disclosing his interest in such measure or bill, and the same be carried by his vote, he shall forfeit his office, and the measure or bill shall be void." Section 12 of the same article provides: "No member of the council or other officer of the city, shall, *either directly or indirectly,* be a party to, or in any manner *interested in,* any contract or agreement with such city, and any matter, cause, or thing whatsoever, by which any liability of indebtedness is in any way or manner created against such city; and if any contract or agreement shall be made in violation of the foregoing provision, the same shall be null and void, and no action shall ever be maintained against the city."

It is admitted the mayor had no *direct* personal interest in the contract. While some of the officers of the construction company were officers of the trust company, and the construction company owed the latter some money, standing alone such personal interest is too remote to challenge the contract. The question hinges upon what is known as "personal or private interest." The "interest" in a matter which will disqualify a pub-

lic official acting in an executive capacity must be certain, pecuniary or proprietary, and capable of proof. It must be direct, not possible or contingent, nor depending on an indirect benefit, as that contract may or may not affect other independent transactions. A sentimental interest or a general interest is not enough. In short, "interest" must be reduced to a financial one coming directly to the public officer or to the company of which he is an officer. A contract would be manifestly against public policy if it were awarded by a person having a direct personal interest in pecuniary return from the contract. In no real sense would the beneficial interest in this contract flow to the mayor of the city. The proceeds of the contract are to be received by the construction company, the real owners of the stock being persons removed from the trust company; although such money may possibly be used to pay debts to the bank in which the mayor is a director, and the bank may be interested in such payment, such relation would not make the mayor's interest a personal one, under the act. It might be that the mayor, through friendship, wanted the contract so awarded, or wished to see it pay its debts, but that is not a personal interest within the act. It must be a more direct personal interest, weighed in terms of money coming from the contract as such. Where a municipality lets a contract to a company which is indebted to another company, one of whose officers is mayor of the municipality, the interest of the mayor is not such a personal interest as will void the contract. The relation of debtor and creditor between two corporations does not ordinarily create in the officers of either company a personal interest in the debt.

In Newport Wharf & Lumber Co. v. Drew, 125 Cal. 585, 58 Pac. 187, it is stated: "The claim......[was] that by reason of his dual relation he was disqualified from accepting the work, upon the ground that by such acceptance he enabled the bank in which he was interested to receive the amount of the estimate. Such ad-

vantage to the bank did not, however, flow directly to it from the acceptance of the work, but was merely an incidental consequence thereof." See also Com. ex rel. v. Strickler, 259 Pa. 60.

The second question, that the contract was awarded to the next lowest bidder, may be disposed of on the findings of the court below, none of which was assigned as error. The court said that in awarding the contract the action of council was amply justified. Section 6 of the Act of May 27, 1919, P. L. 310, requires contracts to be given to the lowest responsible bidder. There is no evidence of bad faith in awarding the contract; hence the mere fact that it is awarded to one who is not the lowest bidder pecuniarily able to carry out the provisions of the contract, is not sufficient of itself to defeat the letting. The burden is on one assailing such act to show that the lowest bidder is a responsible bidder within the meaning of that term, and that the municipal officers abused the discretion lodged in them. "Lowest responsible bidder" does not mean that such bidder is merely pecuniarily responsible to carry on the work. The word "responsible" includes a number of things. It contemplates promptness, faithfulness and the capacity and ability to do the work according to the plans and specifications; men of skill must be employed in and about the work. The municipal authorities, in investigating the bidders, should inquire into the character of work heretofore done by them and determine whether it was safe. Every bar should be erected by municipal authorities against the dishonest contractor, one who would impose inferior work or material on the city; such work can be got through in spite of the utmost caution on the part of inspectors, engineers, and other authorities in charge of the work. Much depends on the inherent honesty of those who do the work. Courts should not be zealous to interfere with letting contracts, unless they are satisfied the city has been unduly made to suffer, either through fraud or careless attention to

business. The powers which city officials exercise are deliberative and discretionary; in the absence of evidence tending to show bad faith or corrupt motives, the award of a contract to a higher bidder, after an investigation, should not be stricken down: Reuting et al. v. Titusville, 175 Pa. 512. Executive officers are clothed with the responsibility of originating and executing plans for the public good; the presumption is that their acts are on such considerations and their decisions reached in a legal way after an investigation. When their actions are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden; courts can and will interfere only when it is made apparent this discretion has been abused: Hibbs v. Arensberg, 276 Pa. 24; Lamb v. Redding, 234 Pa. 481; Day v. Amwell Twp. School Dist., 283 Pa. 248; Summit Hill School Directors Removal, 289 Pa. 82; Hiorth v. Chester City, 282 Pa. 387.

The City of New Castle had considerable experience with the other bidder's work; it had been found that it did defective work, was slow in its completion, and put in inferior material, not in compliance with its contract. It would appear that council exercised a very wise discretion.

The decree of the court below is affirmed at the cost of appellant.