## Commonwealth ex rel. Boyle v. Jakomas

*Edward C. Boyle*, District Attorney, and *William Claney Smith*, Assistant District Attorney, for relator.

*James P. McArdle, Rack & Broder* for respondent.

KENNEDY, J., August 3, 1956.—Edward C. Boyle, District Attorney of Allegheny County as relator, filed a complaint (twice amended) in quo warranto seeking judgment of ouster and forfeiture of office of defend-

ant, Andrew J. Jakomas, who is and has been since the first Monday in January, 1954, Mayor of the City of McKeesport, a city of the third class in this county. The complaint is based on the contention that defendant voted for the passage of a city council resolution No. 7325 in which he had a personal financial interest in securing a compromise of municipal liens on property then owned by him, and thereby offended against the proscription of The Third Class City Code, as amended, June 28, 1951, P. L. 662, art. X, sec. 1009, 53 PS §36009, which provides as follows:

"Section 1009. Disclosures of Interest by Councilman.—A member who has a personal or private interest in any question, measure or bill proposed or pending before the council shall disclose the fact to council, and shall not vote thereon, nor take any part in the discussion of the same. If such interested person shall vote without disclosing his interest in such question, measure or bill, he shall forfeit his office, and council may avoid the enactment or transaction or not, as it deems best."

The complaint avers that on June 27, 1954, defendant, Andrew J. Jakomas and Mary H. Jakomas, his wife, purchased from Thomas G. Tyson et ux., a certain piece of ground in the eighth ward of the City of McKeesport, recorded in the office of the Recorder of Deeds in Allegheny County in D. B. V. 3404, page 371, and which deed conveys lot no. 287 and 15 feet of lot no. 288 in the Tube Mills Plan of Lots as recorded in P. B. V. 21, page 138. The detailed description by metes and bounds sets forth that the lot commences at the northeast corner of Hartman Street and Myrtle Street and runs along Myrtle Street 95 feet to Sisler Alley, and along Hartman Street a distance of 55 feet and of even depth to Sisler Alley. It is further set forth in the complaint that on July 1, 1955, Resolution

No. 7325 was presented in city council and again on August 5, 1955, when defendant was present and voted in favor of the passage of said resolution, without disclosing he had a personal or private interest therein.

Resolution No. 7325 is set forth at large in the complaint. In sum it states that the present owner of the property in the eighth ward (Thomas G. Tyson) made an offer of settlement of municipal liens affecting certain properties that he had acquired; that all back taxes will be paid, that the city assessor and city solicitor have examined the properties as to their values and possible return from forced sales, that it appears to be to the advantage and best interest of the city to accept the offer of settlement based on the face value of municipal claims, plus 50 percent of the interest which now exceeds the principal sum, plus record costs. The city solicitor was authorized to accept the offer of settlement subject to approval of that settlement by the court of common pleas. A brief abstract of the properties is set forth in the resolution showing three properties on Sarah Street and five properties on Hartman Street, together with the amount of the liens as to each lot, the accumulated interest thereon, the number and term in the M. L. D. and the record costs.

Paragraph seven of the complaint alleges that the property owned by defendant and his wife on Hartman Street would be benefited by said Resolution No. 7325 in that the exoneration of 50 percent of the interest would reduce the three liens on this property in the approximate sum of $800. Following the filing of the second amended complaint a stipulation was entered into by counsel for the parties herein in which defendant agreed to withdraw his motion to strike and therefore the matter before us for disposition is defendant's preliminary objections in the nature of a demurrer to the second amended complaint.

Seven reasons were assigned in the demurrer as aforesaid but in the argument and in the brief of counsel for defendant they were consolidated and may be reduced to four reasons.

(1) Is defendant, as mayor, bound by the provisions of section 1009, supra? It is argued that this section is headed "Disclosures of Interest by Councilman" and that in article XII of the code, which legislates as to the mayor of a city of the third class, that the same proscription is not set forth. However, section 1002 and other sections of the code provide:

"Section 1002. Vesting of Legislative Power.—The legislative power of every city shall be vested in a council composed of the mayor and four councilmen.

"Section 1003. Organization of Council.—The members of council shall assemble in their place of meeting, for the purpose of organizing, at ten o'clock in the forenoon of the first Monday of January next succeeding the regular municipal election. The mayor shall be the president of the council, and a member thereof, and shall have the same rights and duties, including the introduction of bills and the making of motions, as pertain to councilmen."

"Section 1007. Voting; No veto; Vote Necessary to Pass Ordinance.—Each of the five members of council, shall vote on all questions coming before the council, except as hereafter provided. The mayor shall have no right of veto. Except as otherwise provided in this act, an affirmative vote of three members shall be necessary in order to pass any ordinance, resolution, rule or regulation."

It is clear from these provisions of the code that the mayor of a city of the third class is also a member of council and counsel for defendant admits this. However, it is argued that he is not necessarily a councilman and that section 1009 is captioned "Disclosures of Interest by Councilman." Such a caption or heading

of an article in a lengthy code passed by the legislature is not equivalent to the title of an act of the legislature, nor do the same constitutional provisions apply to it as to titles of acts of assembly, namely, that the content of the act must be disclosed in the title. Such headings are inserted in codes simply as a convenience for the reader.

Considering the other sections of the code as above set forth dealing with the powers, duties, responsibilities, etc., of the mayor of a third class city, we are of the opinion that such a party is bound by the provisions of section 1009.

(2) Is an averment of knowledge of personal or private interest essential in a complaint in quo warranto? There is no such averment in the complaint as amended, and it is therefore argued that unless an additional amendment making such an averment is filed, that the complaint does not set forth a good cause of action against defendant. In numerous analogous cases heretofore decided by our appellate court, it has been held that knowledge of the law proscribing elected public officials from participating in legislation in which they have a personal or private interest is neither a necessary averment nor a requirement of proof at trial. See Commonwealth ex rel. v. Egan, 234 Pa. 24 (1912); Commonwealth ex rel. Whitehouse v. Harris, 248 Pa. 570; In re Appeal from the Report of Township Auditors of Coal Township, 95 Pa. Superior Ct. 401; Likovich Appeal, 347 Pa. 40; Commonwealth v. Miller, 31 Pa. Superior Ct. 309, and other cases cited in those opinions.

However, it is argued that Resolution No. 7325 is an omnibus resolution in which defendant is not named in it, but on the contrary that the name of the owner of the properties is given as Thomas G. Tyson, and that the resolution incorporates three other properties on Sarah Street and five on Hartman Avenue.

It is our opinion in these circumstances that lack of knowledge of personal or private interest in such a resolution might be an affirmative defense when properly averred in the answer, but it need not be averred by the district attorney as relator in the complaint in order to make out a cause of action requiring defendant to answer. As stated by relator in his counsel's brief: "The problem of notice or knowledge, aside from the requirement for such an averment, is not a question of law but rather is a question of fact for the consideration of a jury."

(3) If the resolution (the resolution No. 7325) benefits and affects other parties as well as defendant, does section 1009 bind him? Counsel for both parties agree that the rule governing the interest involved under section 1009 was set forth in the case of Wilson v. New Castle City, 301 Pa. 358, page 362-3:

"The 'interest' in a matter which will disqualify a public official acting in an executive capacity must be certain, pecuniary or proprietary, and capable of proof. It must be direct, not possible or contingent, nor depending on an indirect benefit, as that contract may or may not affect other independent transactions. A sentimental interest or a general interest is not enough. In short, 'interest' must be reduced to a financial one coming directly to the public officer or to the company of which he is an officer."

In this case it was held that the fact that the proceeds of a municipal contract to be received by a construction company might be used by that company to pay a debt to a trust company in which the mayor was a director did not make the mayor's interest such a personal one under The Third Class City Code of 1913, that because he voted to award the contract, the same was void and could be enjoined on a taxpayer bill.

Applying this test to the averments in the complaint,

which at this stage of the proceeding must all be taken as verities and provable, it appears to us that this reason, viz., whether defendant had such a personal or private interest in resolution No. 7325 that he was required under section 1009 to have disclosed that fact to the other members of council and to have refrained from voting, becomes a mixed question of law and of fact and its determination must therefore await the trial of this proceeding. Entertaining this view, it is therefore unnecessary to analyze and distinguish authorities cited by defendant's counsel.

(4) Did not only defendant's grantor have a financial interest in the resolution, not defendant? Defendant's counsel argues that defendant and his wife received a general warranty deed. However, the complaint does not state such to be the fact and none of the earlier reasons, later withdrawn to strike the complaint or to ask for a more specific one, suggested that the recorded deed should have been attached as an exhibit or all of its essentials averred. Therefore this reason could readily be disposed of as being a "speaking demurrer". In any event the covenants in a general warranty deed are personal, but the in rem municipal liens on the property are in no way affected by the grantor's warranty. If the grantee is required to pay off the liens he can recoup from the grantor provided the grantor is solvent. However, while probably not involved in this case, it can be reasonably visualized that the purchase price of a property could be substantially reduced because a grantee was in a position to have municipal claims and taxes against the property totally or partially exonerated.

It is our conclusion therefore that defendant's preliminary objections in the nature of a demurrer should be overruled and that this proceeding should go to trial on its merits.

*Order*

And now, August 3, 1956, after argument and consideration of briefs, the preliminary objections ex parte defendant in the nature of a demurrer be and the same are hereby overruled and dismissed.

Defendant is granted 20 days to file an answer.

*Exception*

Eo die exception is noted to defendant and bill sealed.