Mount Gretna Authority *v.* The Mt. Gretna Heights Association, Appellant.

Argued February 3, 1977, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Thomas P. Harlan,* with him *Beaver, Wolf & Harlan,* for appellant.

*Keith L. Kilgore,* with him *Spitler, Rowe and Kilgore,* for appellee.

OPINION BY JUDGE WILKINSON, February 23, 1977:

This is an appeal from an order in a declaratory judgment proceeding upholding appellee's purchase of a sewer system against appellant's claims of a violation of Section 10(D) of the Municipality Authorities Act of 1945 (Act), Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §312(D).[1] We affirm.

The facts are stipulated but will require recitation at some length. The Pennsylvania Chautauqua Association (Chautauqua), a nonprofit corporation, formed the Borough of Mount Gretna (Borough) in

---

[1] The section reads as follows:

D. No member of the Authority or officer or employe thereof shall either directly or indirectly be a party to or be in any manner interested in any contract or agreement with the Authority for any matter, cause or thing whatsoever by reason whereof any liability or indebtedness shall in any way be created against such Authority. If any contract or agreement shall be made in violation of the provisions of this section the same shall be null and void and no action shall be maintained thereon against such Authority.

the 1920's with borders coterminus with Chautauqua property lines. Through deed restrictions still in force, all property owners in the Borough are members of the Chautauqua and, therefore, each of the five members of the governing Borough Council is a member of the Chautauqua. The objectives of the Chautauqua are to advance the literary and scientific attainment, recreation and entertainment of the Borough and surrounding communities and to maintain buildings and sanitary and water facilities for those purposes. The Chautauqua assesses each property owner within the Borough a sum to further its charitable objectives and, by a separate billing for each, to maintain garbage removal and water service for Borough residents.

The Chautauqua operated a sewage system since the turn of the century which, as of July 1, 1974, served not only the entire Borough but adjacent parts of other municipalities including appellant, another nonprofit corporation. The system was operated by a private organization (The Chautauqua Sewer Company) and was under the control of the Pennsylvania Public Utility Commission which authorized the Chautauqua to make an annual charge of $25.00 per residence in 1974.

In 1972 the Chautauqua felt that some action was required to meet the growing demands on its deteriorating sewer plant. An engineer's report disclosed that modernization of the plant would require expenditures of at least $500,000 over a period of years. Because the Chautauqua's sewage company was a private organization, federal financing, state grants and favorable commercial lending rates were unavailable to it. The Borough Council then created appellee to assume operation and control of the sewage system. Appellee's board consisted of five members, all of whom were residents of the Borough and, hence, mem-

bers of the Chautauqua. Four of the five were also members of the Chautauqua board and three of the five were, at appellee's inception, members of the Borough Council as well.

In May, 1974, a special stockholders' meeting of the Chautauqua was held at which the sale of the sewage system to appellee for an appraised price of $115,000 was overwhelmingly approved. Appellee thereupon passed a resolution for the taking of the system for $115,000 in lieu of condemnation proceedings and obtained a state grant and financing from a local bank. The Chautauqua placed the $115,000 in an irrevocable trust to further its corporate purposes.

In order to pay off its obligation and maintain the sewage system, appellee raised the residential sewage rate from $25.00 to $128.00[2] annually for both Borough residents and those served by the system in other areas, including appellant's. After appellee billed appellant at the new rate, appellant tendered a check based upon the former rate, which appellee refused and returned. A petition for declaratory judgment was submitted to the Lebanon County Court of Common Pleas, seeking adjudication whether the purchase was violative of Section 10(D) because the members of appellee's board were also members of the Chautauqua. The court upheld the purchase. This appeal followed.

Our review of alleged wrongdoing by municipal officers is limited. "[I]n the absence of improper motivation, demonstrated of record, which prompted the actions of municipal officials, we should not interfere with such actions." *Weber v. Philadelphia,* 437 Pa. 179, 189, 262 A.2d 297, 302 (1970). Here the record is barren of any improper motivation. As the court below noted, the uniqueness of the situation re-

---

[2] This rate was subsequently reduced to $120.00 annually.

quired that members of appellee's board also be shareholders of the Chautauqua. The stipulated facts state that the five members were chosen because each had particular expertise in areas relating to the organization, financing or operation of a sewage system. The lower court found no fraud, collusion, bad faith or abuse of power, and we agree.

Appellant argues that the trust fund will generate income designated to effectuate the purposes of the Chautauqua, one of which is (as noted above) the performance of municipal services for Borough residents. Appellant claims that this reduction in maintenance costs results in a savings to appellee's members (as Borough residents) and is a sufficient interest to render the sale invalid. We disagree. Our Supreme Court has held that:

> The 'interest' in a matter which will disqualify a public official acting in an executive capacity must be certain, pecuniary or proprietary, and capable of proof. It must be direct, not possible or contingent, nor depending on an indirect benefit, as that contract may or may not affect other independent transactions. A sentimental interest or a general interest is not enough. In short, 'interest' must be reduced to a financial one coming directly to the public officer or to the company of which he is an officer.

*Wilson v. New Castle City,* 301 Pa. 358, 362-63, 152 A. 102, 103 (1930).

It is clear that the standards of *Wilson, supra,* have not been met. Any savings which might accrue from the reduction of maintenance costs is shared equally by all Borough residents, not just those few on appellee's board. Further, since the performance of municipal and maintenance services is but one of several purposes of the trust, the amount of income from

the trust designated thereto which might eventually result in a savings to any individual resident is indirect and *de minimus*.

We could not do better than to conclude with a paragraph from Judge GATES' opinion in the court below:

I suppose that any other interpretation of the strictures set forth in the Municipal Authorities Act of 1945 could conceivably lead to absurd results. Municipal Authorities are created and motivated out of financial interests and concerns of the members of the community it serves. Whether the authority is created for the purpose of providing parking, improving water service, redeveloping blighted areas, creating parks and playgrounds or improving sewage treatment facilities, the end result is that the individuals serviced by the authority receive a benefit. If that benefit is equated with interest then no authority could function and its creation would be an exercise in futility. We do not believe the legislature intended an absurd result. Principles of statutory construction require us to interpret statutes so as to avoid absurd results. Statutes ought to be interpreted, where possible, to effectuate and accomplish the purposes for which the law was intended.

Accordingly, we will enter the following

ORDER

Now, February 23, 1977, the order of the Lebanon County Court of Common Pleas, No. 9 Equity Docket 1976, dated April 22, 1976, is hereby affirmed and the appeal dismissed.